Antranik **MALAJALIAN**, Plaintiff, Appellant,

v.

**UNITED STATES of America,** Appellee.

No. 74–1128.

United States Court of Appeals, First Circuit.

Argued Sept. 10, 1974.

Decided Oct. 22, 1974.

---

**843**

Henry A. Follen, Jr., Watertown, Mass., for plaintiff, appellant.

Alfred S. Lombardi, Atty., Tax Div., Dept. of Justice, with whom Scott P. Crampton, Asst. Atty. Gen., James N. Gabriel, U. S. Atty., William A. Brown, Asst. U. S. Atty., Meyer Rothwacks, and Michael L. Paup, Attys., Tax Div., Dept. of Justice, were on brief, for appellee.

Before McENTEE and CAMPBELL, Circuit Judges, and MOORE,* Senior Circuit Judge.

McENTEE, Circuit Judge.

Taxpayer appeals from an order of the district court dismissing his complaint for improper venue. We affirm.

Taxpayer Malajalian, a resident of Beirut, Lebanon, entered the United States under a business visa on April 22, 1972, and remained as a non-resident alien until June 22, 1972, at which time he left this country. On June 20, as the taxpayer was preparing to depart for London from Logan Airport in Boston, a routine inspection of his baggage disclosed $147,595 in bills of small denomination. Notified of the discovery of this treasure-cache, the Internal Revenue Service terminated taxpayer's tax year under § 6851 of the Internal Revenue Code and made two jeopardy assessments against him totaling $131,331. When this amount was levied upon and seized out of taxpayer's funds, still in the possession of the Customs Bureau, he filed a tax return declaring that he had no taxable income for his truncated 1972 tax year and requested a re- fund of the amount seized. After more than six months had passed without action on the claim by the Commissioner, taxpayer instituted suit for refund in the United States District Court for the District of Massachusetts. The court granted the government's motion to dismiss on grounds of improper venue, and this appeal followed.

Section 1346 of the Judicial Code endows the district courts with jurisdiction, concurrent with the Court of Claims, over civil actions against the United States for the recovery of internal revenue taxes alleged to have been erroneously assessed and collected. Section 1402(a)(1) restricts venue in actions against the United States to the district where the plaintiff resides. Since taxpayer, an alien, concededly does not reside in Massachusetts, he cannot lay venue there if § 1402(a)(1) is read literally.

Recently, in a patent infringement suit against an alien, Brunette Machine Works, Ltd. v. Kockum Industries, Inc., 406 U.S. 706, 710 & n. 8, 92 S.Ct. 1936, 1939, 32 L.Ed.2d 428 (1972), the Supreme Court reiterated its longstanding view that "Congress does not in general intend to create venue gaps, which take away with one hand what Congress has given by way of jurisdictional grant with the other." The Court reasoned that "venue provisions are designed, not to keep suits out of the federal courts, but merely to allocate suits to the most appropriate or convenient federal forum." However, it was easier for the Court in Brunette to avoid a venue gap than it is in the instant case. First, Brunette involved construction of conflicting statutory provisions rather than the necessity to read language into a single governing provision. Second, the traditional judicial view that suits against aliens are outside the scope of venue laws does not generally carry over to suits by aliens.

Taxpayer can derive little consolation from the holding of United States v.

---

* Of the Second Circuit sitting by designation.

New York & O.S.S. Co., 216 F. 61 (2d Cir. 1914), an admirality suit under the Tucker Act in which a non-resident alien was permitted to sue upon an express finding that respondent had waived its venue objection. *See also* Choremi v. United States, 28 F.2d 913 (D.Mass. 1928). The court declined to venture an opinion as to the result that would obtain if, as in the instant case, there had been no waiver.

 Taxpayer next cites a series of cases decided under the Suits in Admiralty Act, 46 U.S.C. §§ 741–752 (1970), which has its own venue provision permitting suits against the United States in the district where libelants reside or have their principal place of business or in which the vessel or cargo charged with liability may be found. 46 U.S.C. § 742 (1970). Although there is at least one case to the contrary, The Elmac, 285 F. 665 (S.D.N.Y.1922), the courts construing this provision have generally allowed non-resident aliens to bring suit in any district on grounds that otherwise they would have no forum in which to sue. *See* McGhee v. United States, 154 F.2d 101 (2d Cir. 1946); Metaxas v. United States, 68 F.Supp. 667 (S.D.Cal.1946); Middleton & Co. v. United States, 273 F. 199 (E.D.S.C.1921); Kulukundis v. United States, 132 F.Supp. 477, 132 Ct.Cl. 644 (1955). Apart from the fact that these decisions are predicated upon a special statutory provision, they are inapposite here because the taxpayer, unlike the claimants in the admiralty actions, may repair to the Court of Claims to press his suit, an alternative forum in which his alienage will pose no obstacle.[1]

Legislative history of relevant statutory provisions in fact provides some evidence that Congress was aware of the venue gap existing as to tax refund suits by aliens against the United States in the district courts. Prior to 1966, an alien individual had two possible avenues open for a tax refund suit, without regard to the forum at issue here. An alien before 1966 could sue for a tax refund in the Court of Claims if the country of which he was a citizen permitted itself to be sued by citizens of the United States having claims against it. 28 U.S.C. § 2502 (1970). But even without reciprocity an alien could sue the collecting director in the district court where the director resided, since suit against the collecting director is not, at least in form, a suit against the United States. *See* H.R.Rep. No. 1915, 89th Cong., 2d Sess. 6 (1966). In 1966 Congress abolished refund suits against collecting officers. Act of Nov. 2, 1966, Pub.L. 89–713, § 3(a), 80 Stat. 1108, codified at 26 U.S.C. § 7422(f) (1970). By thus restricting the taxpayer to his judicial district of residence (i. e., in suits against the United States), Congress sought to prevent forum-shopping by taxpayers looking to the district where the tax collector resided. H.R. Rep. 1915, 89th Cong., 2d Sess. 6 (1966). Congress apparently recognized the effect this abolition would have on aliens:

". . . in order to preserve the right of aliens and foreign corporations to bring tax refund suits, the bill also modifies present law by permitting aliens and foreign corporations to bring such suits directly against the United States irrespective of whether the foreign country of citizenship or incorporation allows itself to be sued by U. S. citizens or corporations." *Id.*

Implicit in this statement is the awareness and conclusion that an alien not

---

[1]. The taxpayer correctly asseverates that if forced to resort to his remedy in the Court of Claims he will no longer be entitled to a jury trial as he would in the district court under 28 U.S.C. § 2402 (1970). His contention that he must therefore be afforded access to the district court to assert his jury trial "right" overlooks the fact that the constitutional jury trial guarantee is inapplicable in tax refund suits. Wickwire v. Reinecke, 275 U.S. 101, 105–106, 48 S.Ct. 43, 71 L.Ed. 840 (1927). While an alien who must sue in the Court of Claims lacks the choice between forums available to a resident and may incur additional time and travel costs, this slight unequal treatment does not amount to a convincing Equal Protection claim in view of Congress' apparent desire to have all alien suits brought in one court, the Court of Claims.

"residing" in any judicial district could not sue the United States in any district court. In the view of the writers of the congressional reports, the 1966 legislation was enacted "only because other adequate remedies either are already available, or are being made available by this bill, for the recovery of illegal collections." *Id. See also* S.Rep No. 1625, 89th Cong., 2d Sess. 6–7 (1966–2 Cum. Bull. 803, 807–08).

The taxpayer also adverts to several statutory provisions to support his position. Section 1402(a)(2) of the Judicial Code accords non-resident alien *corporate* taxpayers the privilege of bringing suit in the district where the tax return was filed. Nowhere in the meager legislative history of this provision do we find the slightest hint that Congress intended its benefits to extend to individuals. S.Rep. No. 2445, 85th Cong., 2d Sess., in U.S. Code Cong. & Admin.News 5263, 5265. In fact it was adopted in response to conflicting decisions in the federal courts concerning the residence of corporations. The legislators did recognize that the bill would cover the apparent problem of lack of venue for foreign corporations. H.R.Rep. No. 1715, 85th Cong., 2d Sess. 2 (1958); S.Rep. No. 2445, *supra,* citing Argonaut Navigation Co. v. United States, 142 F.Supp. 489 (S.D.N.Y.1956). Nor is venue proper in the district court for an alien, individual or corporate, in any other of the various types of suits brought under the Tucker Act. 7B Moore, Federal Practice § 1402, at JC 598.1 (2d ed. 1974).

Finally, the taxpayer cites language in the legislative history of an amendment to the Judicial Code eliminating the $10,000 ceiling on tax refund suits in the district courts, Act of July 30, 1954, Pub.L. No. 83–559, ch. 648, § 2(a), 68 Stat. 589, codified in 28 U.S.C. § 2402 (1970), to the effect that all taxpayers should have the benefit of a local remedy regardless of their financial status. H.R. Rep. No. 659, 83d Cong., 2d Sess., in U.S. Code Cong. & Admin.News 2716, 2717. Context indicates that the innocuous use of the word "all" in a committee report was not intended to effect the major revision of the law which taxpayer seeks; neither the amendment nor the report makes any reference to alienage.

The district court's order dismissing the complaint is affirmed.