Jorge E. **GARZON**, Plaintiff,

v.

**UNITED STATES of America, Defendant.**

**No. 84–2381-Civ-ATKINS.**

United States District Court, S.D. Florida.

Feb. 21, 1985.

Stanley P. Kaplan, Miami, Fla., for plaintiff.

Stephen Kwartin, U.S. Dept. of Justice, Tax Div., Washington, D.C., for defendant.

## MEMORANDUM OPINION AND FINAL ORDER

ATKINS, Senior District Judge.

This is an action brought by plaintiff, Jorge E. Garzon, against the United States of America pursuant to 26 U.S.C. § 7429.[1]

---

1. Title 26 U.S.C.A. § 7429 provides:

(a) *Administrative review.*—

(1) *Information to taxpayer.*—Within 5 days after the day on which an assessment is made under section 6851(a), 6861(a), or 6862, the Secretary shall provide the taxpayer with a written statement of the information upon which the Secretary relies in making such assessment.

(2) *Request for review.*—Within 30 days after the day on which the taxpayer is furnished the written statement described in paragraph (1), or within 30 days after the last day of the period within which such statement is required to be furnished, the taxpayer may request the Secretary to review the action taken.

(3) *Redetermination by Secretary.*—After a request for review is made under paragraph (2), the Secretary shall determine whether or not—

(A) the making of the assessment under section 6851, 6861, or 6862, as the case may be, is reasonable under the circumstances, and

(B) the amount so assessed or demanded as a result of the action taken under section 6851, 6861, or 6862 is appropriate under the circumstances.

(b) Judicial review.

(1) *Actions permitted.*—Within 30 days after the earlier of—

(A) the day the Secretary notifies the taxpayer of his determination described in subsection (a)(3), or

(B) the 16th day after the request described in subsection (a)(2) was made, the taxpayer may bring a civil action against the United States in a district court of the United States for a determination under the subsection.

(2) *Determination by district court.*—Within 20 days after an action is commenced under paragraph (1), the district court shall determine whether or not—

(A) the making of the assessment under section 6851, 6861, or 6862, as the case may be, is reasonable under the circumstances, and

(B) the amount so assessed or demanded as a result of the action taken under section 6851, 6861, or 6862, is appropriate under the circumstances.

(3) *Order of district court.*—If the court determines that the making of such assessment is unreasonable or that the amount assessed or demanded is inappropriate, the court may

Garzon is seeking judicial review of a termination assessment of income taxes against him by the Internal Revenue Service. The assessment of $38,346 was made on July 23, 1984. The plaintiff timely requested administrative review under 26 U.S.C. § 7429(a)(2) and timely commenced this action by the filing of his complaint on October 9, 1984 pursuant to 26 U.S.C. § 7429(b)(1). Hearings in this matter were held on October 27, 1984 and November 16, 1984.

The plaintiff alleges that this court has jurisdiction under the provisions of 26 U.S.C. § 7429 and 28 U.S.C. §§ 1346(e)[2] and 1402(c).[3] The defendant, Government, asserts that this court lacks venue under 26 U.S.C. §§ 7429(e) and 28 U.S.C. § 1402(a)(1)[4] because the plaintiff is a nonresident alien.

### Facts

Plaintiff, Garzon, is a citizen of the Republic of Colombia. On the evening of July 17, 1984, plaintiff's automobile was stopped by officers of the Metro-Dade Police Department on a traffic violation. Plaintiff was accompanied in his car by a passenger named Luis Hernando Juban.

After an initial conversation between the officers and Garzon, the officers indicated that they were suspicious of Garzon's and Juban's immigration status. When questioned by the police officer, Garzon stated that he had cash in a shopping bag in the rear of the vehicle. Garzon further stated that the amount was $91,000, and that the cash was to be used to purchase some shoes. Plaintiff has also asserted that he is the manager of a shoe store called Emerald Shoes.

The police officers called in detectives from the Organized Crime Bureau of the Miami-Dade County Public Safety Department who, in turn, called in agents of the U.S. Customs Service and the Immigration and Naturalization Service. Garzon was

order the Secretary to abate such assessment to redetermine (in whole or in part) the amount assessed or demanded, or to take such other action as the court finds appropriate.

(c) *Extension of 20-day period where taxpayer so requests.*—If the taxpayer requests an extension of the 20-day period set forth in subsection (b)(2) and establishes reasonable grounds why such extension should be granted, the district court may grant an extension of not more than 40 additional days.

(d) *Computation of days.*—For purposes of this section, Saturday, Sunday, or a legal holiday in the District of Columbia shall not be counted as the last day of any period.

(e) *Venue.*—A civil action under subsection (b) shall be commenced only in the judicial district described in section 1402(a)(1) or (2) of title 28, United States Code.

(f) *Finality of determination.*—Any determination made by a district court under this section shall be final and conclusive and shall not be reviewed by any other court.

(g) *Burden of proof.*—

(1) *Reasonableness of termination or jeopardy assessment.* In an action under subsection (b) involving the issue of whether the making of an assessment under section 6851, 6861, 6862 is reasonable under the circumstances, the burden of proof in respect to such issue shall be upon the Secretary.

(2) *Reasonableness of amount of assessment.*—In an action under subsection (b) involving the issue of whether an amount assessed or demanded as a result of action taken under section 6851, 6861 or 6862 is appropriate under the circumstances, the Secretary shall provide a written statement which contains any information with respect to which his determination of the amount assessed was based, but the burden of proof in respect of such issue shall be upon the taxpayer.

2. Title 28 U.S.C.A. § 1346(e) provides:

(e) The district courts shall have original jurisdiction of any civil action against the United States provided in section 6226, 6228(a), 7426, or 7428 (in the case of the United States district court for the District of Columbia) or section 7429 of the Internal Revenue Code of 1954.

3. Title 28 U.S.C.A. § 1402(c) provides:

(c) Any civil action against the United States under subsection (e) of section 1346 of this title may be prosecuted only in the judicial district where the property is situated at the time of levy, or if no levy is made, in the judicial district in which the event occurred which gave rise to the cause of action.

4. Title 28 U.S.C.A. § 1402(a)(1) provides:

(a) Any civil action against the United States under subsection (a) of section 1346 of this title may be prosecuted only:

(1) Except, as provided in paragraph (2), in the judicial district where the plaintiff resides;

interrogated by the agents of these various investigative agencies for several hours. He voluntarily consented to a search of his vehicle and apartment. A dog trained to sniff narcotics was used to search for evidence of criminal activity. The dog sniffed Garzon's currency, automobile, and apartment. No evidence of criminal activity was found as a result of this investigation.

■ Garzon was released but his money was retained by the Property Clerk's Office of the Organized Crime Bureau. Special Agent Ronald Anderson of the U.S. Customs Service notified the I.R.S. about the possibility of a termination assessment.[5] Internal Revenue Agent Rosa Blanco determined that Garzon owed $38,346 in taxes for the period between January 1, 1984 and July 1984.

At the hearing held in this case, Garzon testified that when his father died in Colombia in 1981, he became heir to a considerable inheritance. A substantial portion of this inheritance consisted of a farm in Colombia which he sold to Hernan Cortes Ortiz. The selling price was the equivalent of $80,000 in U.S. dollars which was paid by Ortiz to Garzon in various installments sometime between June, 1982 and June, 1983. Ortiz made these payments by bringing the U.S. currency from Colombia to the United States. Garzon stated that this additional currency was all part of his inheritance from his father's estate. Although neither Garzon nor Ortiz could recall the exact amount brought into the United States, they did testify that it was not less than $100,000. According to Garzon, the currency which he had in his possession on July 17, 1984 was part of the inheritance transported by Ortiz.

Ortiz' passport established that he had, in fact, made numerous trips between Colombia and the United States during 1982 and 1983. He stated that he was a merchant in Colombia who traveled to the United States to purchase merchandise for export to his native country. These purchases were often made for cash which he brought into the United States along with Garzon's money. Since he often carried in excess of $5,000 in currency, he would report said currency to Customs on its form 4790, commonly referred to as a CMIR. Based upon entry dates stamped in Ortiz' passport, Customs was able to locate CMIR's which reflected that Ortiz reported bringing in currency in excess of $350,000 during the period from September 1982 through July 1983.

Garzon was aware that a Custom's Form 4790 was required to be filed whenever more than $5,000 in currency was transported into the United States. On the evening of July 17, 1984, Garzon was unsure as to whether Ortiz had, in fact, declared the currency he was transporting. In order to protect Ortiz, Garzon concocted a story that the currency in his vehicle had been sent to him via an Avianca Airlines flight on July 12, 1984.

Garzon was employed until sometime in February, 1984, as a part time waiter (working three days a week) at Jacaranda night club. He earned a salary of $15.00 a

---

**5.** As part of the Tax Reform Act of 1976, Congress added section 7429 to the Internal Revenue Act. That section is applicable to jeopardy and termination tax assessments made pursuant to sections 6851, 6861 and 6862 of the Internal Revenue Code for which notice of the assessment and demand for payment are made after February 28, 1977. The assessment in this case is a "termination assessment" for the period January 1, 1984 to July, 1984.

Sections 6851, 6861 and 6862 embody methods of assessment and collection available to the Internal Revenue Service in cases where the more routine methods for collection of taxes may be rendered ineffective, or may be "jeopardized" to some degree if collection efforts are delayed. The special types of assessments are divided into two categories: "termination" and "jeopardy." Section 6851 contains the provisions governing the making of termination assessments of income, and sections 6861 and 6862 contain the authority for making jeopardy assessments.

The basic distinction between the two types of assessments is that a termination assessment (§ 6851) is made for a tax year which has ended but for which the due date for filing the required return has not yet passed. By contrast, a jeopardy assessment (§§ 6861 and 6862) is made for a tax year which has ended and for which the due date for filing the required return has passed.

day plus tips of approximately $60 to $70 a day. He was unemployed from February 1984 until June 16, 1984 when he went to work as a manager at Emerald Shoe Store. His monthly salary there was $1,350 from which his employer deducted FICA tax of $90.45 and income tax of $209.55.

Pursuant to the termination assessment in the amount of $38,346, the defendant, through the Internal Revenue Service, levied upon the $90,780 held by the Property Clerk's Office of the Organized Crime Bureau. Upon payment to the Internal Revenue Service by the Property Clerk, the balance of the money was returned to Garzon.

### Immigration Status

On or about December 30, 1981, the plaintiff applied for and received a nonimmigrant B–1/B–2 multiple entry visa from the United States Consulate in Bogota, Colombia, valid through December 30, 1985. A B–1/B–2 visa permits the visa holder to apply for multiple entries into the United States, provided that no stay exceeds six months in duration. At the time this cause of action arose, Garzon had exceeded the maximum six month stay allowed to him under his multiple-entry visa.

In his affidavit filed with the Internal Revenue Service on September 25, 1984, Garzon stated: "[I]t was never his intention permanently to reside here or to apply for U.S. citizenship." He also recited in that affidavit that he was in the United States only to recover money taken from him by the Internal Revenue Service.

The plaintiff married a United States citizen on September 10, 1984. Garzon, however, never claimed to be a resident alien until October 25, 1984, the day after the defendant, Government, moved to dismiss this action for lack of venue by alleging that the plaintiff is a nonresident alien.

### Jurisdiction and Venue

Although this court has jurisdiction of this cause under 26 U.S.C. § 7429(b)(1) and 28 U.S.C. § 1346(e), the defendant has filed a Motion to Dismiss for improper venue alleging that Garzon is a nonresident alien

and, therefore, barred from bringing this action in this court. The first issue to be considered by the court, therefore, is whether Garzon is a resident or a nonresident alien. Once this issue is resolved the court must then determine whether a nonresident alien has the right to contest termination assessments under I.R.C. § 7429.

There are few reported cases which deal with the venue issues raised by 26 U.S.C. § 7429(e). Under section 7429(e) a civil action such as the one we have before us, "shall be commenced only in the judicial district described in section 1402(a)(1) ... of Title 28, United States Code." Section 1402(a)(1) provides that a civil action may be prosecuted against the United States under 28 U.S.C. § 1346(a) only "in the judicial district where the plaintiff resides." The defendant, Government, argues that Garzon is a nonresident alien and not a resident in any judicial district in this country.

The applicable case law supports the proposition that the issue of residency is a factual one and must be determined through a consideration of all relevant facts and circumstances. *Williams v. United States*, 704 F.2d 1222 (11th Cir. 1983); *Park v. Commissioner*, 79 T.C. 252 (1982); *Adams v. Commissioner*, 46 T.C. 352 (1966); *Jellinek v. Commissioner*, 36 T.C. 826 (1961). The court finds that on the facts and circumstances in this case, plaintiff, Garzon, is a nonresident alien. In further support of its decision the court relies on *Constantinescu v. Commissioner*, 11 T.C. 37 (1948), where the court held that petitioner, an alien physically present in the United States, was not a resident of the United States within the meaning of Treasury regulations. The Tax Court further held that as a nonresident alien, petitioner was not taxable on her capital gains.

Having now determined that the plaintiff is a nonresident alien, the court must turn to the difficult question of whether Garzon, as a nonresident alien, has the right to contest the termination assessment under 26 U.S.C. § 7429(e). The court in *Williams*

*v. United States,* 704 F.2d 1222, 1227 (11th Cir.1983) specifically reserved this question: "If the court finds that Williams is a nonresident alien taxpayer, it must consider the difficult constitutional question of whether the government may constitutionally raise improper venue to bar a nonresident alien taxpayer from use of the jeopardy assessment review procedures provided by section 7429 I.R.C."

Section 7429(e) effectively provides that venue is improper in all districts for nonresident alien taxpayers. This provision necessarily gives rise to questions concerning plaintiff's due process (equal protection) rights under the Fifth Amendment of the United States Constitution.[6] This case, thus, places in issue the constitutionality of 26 U.S.C. § 7429(e) and 28 U.S.C. § 1402(a)(1). At the outset, the court recognizes that it is settled law that the constitutionality of a statute should be scrutinized as it applies to the case before it. *See Broadrick v. Oklahoma,* 413 U.S. 601, 610–12, 93 S.Ct. 2908, 2914–16, 37 L.Ed.2d 830, 838–40 (1973); *United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524, 529 (1960).

There is no doubt that resident alien taxpayers may avail themselves of the benefits of 26 U.S.C. § 7429. This is consistent with the purpose of section 7429 which basically provides for an "expedited" means of judicial review of jeopardy assessments made by the IRS. S.Rep. No. 938, (Part I), 94th Cong.2d Sess. 364 (1976), reprinted in 1976 U.S.Code Cong. & Ad. News (90 Stat.) 2897, 3439. In addition, Judge Spellman in *Botero v. United States,* 560 F.Supp. 616 (S.D.Fla.1983), stated that jeopardy and termination assessment provisions were included in the Internal Revenue Code to help prevent evasion of federal taxes through secretion of assets and transfers of property beyond the reach of federal law and federal agencies. *Id.* at 618.

The plaintiff, Garzon, has been saddled with all of the burdens and obligations of taxation yet the Government contends that he is not entitled to the expedited remedies allowed to all other taxpayers. Congress enacted section 7429 so that summary action could be taken with jeopardy and termination assessments in certain situations. The provisions for swift review in section 7429, however, suggest that Congress was also aware that such assessments are made by the Internal Revenue Service without time to fully investigate all the factors required for a proper determination as to whether the making of the assessment was reasonable and/or the amount assessed was appropriate. Prior to the assessment in this case, Garzon was given no opportunity to present evidence that the source of the money seized and used to support the assessment came from a non-taxable source.

Under Treas.Reg. § 1.871–1(a) (1984),[7] the status of an alien taxpayer is divided into two classes: (1) nonresident alien or (2)

---

**6.** *Williams v. United States,* 704 F.2d 1222, 1227 n. 5 (11th Cir.1983).

**7.** Treasury Regulation § 1.871–1(a) provides:

(a) *Classes of aliens.* For purposes of the income tax, alien individuals are divided generally into two classes, namely, resident aliens and nonresident aliens. Resident alien individuals are, in general, taxable the same as citizens of the United States; that is, a resident alien is taxable on income derived from all sources, including sources without the United States. See § 1.1–1(b). Nonresident alien individuals are taxable only on certain income from sources within the United States and on the income described in section 864(c)(4) from sources without the United States which is effectively connected for the

taxable year with the conduct of a trade or business in the United States. However, nonresident alien individuals may elect, under section 6013(g) or (h), to be treated as U.S. residents for purpose of determining their income tax liability under chapters 1, 5, and 24 of the code. Accordingly, any reference in §§ 1.1–1 through 1.1388–1 and §§ 1.1491–1 through 1.1494–1 of this part to nonresident alien individuals does not include those with respect to whom an election under section 6013(g) or (h) is in effect, unless otherwise specifically provided. Similarly, any reference to resident aliens or U.S. residents includes those with respect to whom an election is in effect, unless otherwise specifically provided.

resident alien. An alien's status is important because its resolution determines how the alien will be taxed by the United States. A resident alien is taxed the same way a United States citizen is taxed. A nonresident alien is taxed according to three defined sub-classes. *See* Treas.Reg..§ 1.871–1(b).[8]

In Revenue Agent Blanco's report, she refers to Internal Revenue Form 1040 which is the form used by United States citizens and resident aliens for filing their annual income tax returns. In addition,

she relied exclusively on section 61 of the Internal Revenue Code[9] as authority for including the $93,280 as gross income. If she considered Garzon a nonresident alien, she should have relied on section 872 of the Internal Revenue Code[10] and referred to Internal Revenue Form 1040 NR (U.S. Nonresident Alien Income Tax Return).

The defendant, Government, argues that venue is improper under section 7429(e) because Garzon is a nonresident alien. At the same time, however, the Government,

---

**8.** Treasury Regulation §§ 1.871–1(b) provides in part:

(b) *Classes of nonresident aliens*—(1) *In general.* For purposes of the income tax, nonresident alien individuals are divided into the following three classes:

(i) Nonresident alien individuals who at no time during the taxable year are engaged in a trade or business in the United States.

(ii) Nonresident alien individuals who at any time during the taxable year are, or are deemed under § 1.871–9 to be, engaged in a trade or business in the United States, and

(iii) Nonresident alien individuals who are bona fide residents of Puerto Rico during the entire taxable year.

**9.** Title 26 U.S.C.A. § 61 provides in part:

(a) *General definition.* Except as otherwise provided in subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

(1) Compensation for services, including fees, commissions, and similar items;

(2) Gross income derived from business;

(3) Gains derived from dealings in property;

(4) Interest;

(5) Rents;

(6) Royalties;

(7) Dividends;

(8) Alimony and separate maintenance payments;

(9) Annuities;

(10) Income from life insurance and endowment contracts;

(11) Pensions;

(12) Income from discharge of indebtedness;

(13) Distributive share of partnership gross income;

(14) Income in respect of a decedent; and

(15) Income from an interest in an estate or trust.

**10.** Title 26 U.S.C.A. § 872 provides:

(a) *General rule.*—In the case of a nonresident alien individual, gross income includes only—

(1) gross income which is derived from sources within the United States and which is not effectively connected with the conduct of a trade or business within the United States, and

(2) gross income which is effectively connected with the conduct of a trade or business within the United States.

(b) *Exclusions.* The following items shall not be included in gross income of a nonresident alien individual, and shall be exempt from taxation under this subtitle:

(1) *Ships under foreign flags.*—Earnings derived from the operation of a ship or ships documented under the laws of a foreign country which grants an equivalent exemption to citizens of the United States.

(2) *Aircraft of foreign registry.*—Earnings derived from the operation of aircraft registered under the laws of a foreign country which grants an equivalent exemption to citizens of the United States and to corporations organized in the United States.

(3) *Compensation of participants in certain exchange or training programs.*—Compensation paid by a foreign employer to a nonresident alien individual for the period he is temporarily present in the United States as a nonimmigrant under subparagraph (F) or (J) of section 101(a)(15) of the Immigration and Nationality Act, as amended. For purposes of this paragraph, the term "foreign employer" means—

(A) a nonresident alien individual, foreign partnership, or foreign corporation, or

(B) an office or place of business maintained in a foreign country or in possession of the United States by a domestic corporation, a domestic partnership, or an individual who is a citizen or resident of the United States.

(4) *Certain bond income of residents of the Ryukyu Islands or the Trust Territory of the Pacific Islands.*—Income derived by a nonresident alien individual from a series E or series H United States savings bond, if such individual acquired such bond while a resident of the Ryukyu Islands or the Trust Territory of the Pacific Islands.

in effect, argues that taxing Garzon as a resident alien under section 61 of the Internal Revenue Code is reasonable. This court cannot condone what appears to be a logically inconsistent and patently unfair result.

■ The court holds that venue in the federal district court is proper under section 7429(e) even for a nonresident alien. To hold otherwise would constitute a taking of plaintiff's property without due process of law and a denial of equal protection under the fifth Amendment. Even if we assume that the jeopardy and termination assessment provisions were included in the Internal Revenue Code to help prevent evasion of federal taxes, there is no rational basis for finding that United States citizens and resident aliens may seek review in federal district court but nonresident aliens must seek a remedy only in the Tax Court and the Court of Claims.

The court finds further support for its holding in *Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). In *Plyler,* the Supreme Court held that a Texas statute which denied undocumented school age children the free public education that it provides to children who are citizens of the United States or legally admitted aliens violated the Equal Protection Clause of the Fourteenth Amendment.

### *The Assessment*

Having determined that venue is proper in this federal district court, we must examine whether the termination assessment was reasonable under the circumstances. This issue arises under section 7429(g)(1) where the burden of proof is on the Secretary.

■ Prior to the enactment of section 7429, certain standards were utilized by the IRS in determining whether the circumstances of a particular case warranted the use of a jeopardy or termination assessment. In considering the enactment of section 7429, Congress expressed its approval of these standards. *See Penner v. United States,* 582 F.Supp. 432, 434 (S.D.Fla.1984).

There are three criteria which must be considered:

(i) The taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself or herself.

(ii) The taxpayer is or appears to be designing quickly to place his, her, or its property beyond the reach of the Government either by removing it from the United States, by concealing it, by dissipating it, or by transferring it.

(iii) The taxpayer's financial solvency is or appears to be imperilled.

Treas.Reg. § 1.6851–1(a) (1978). Based upon the court's consideration of the record, the exhibits, and the testimony in this case, the court has determined that the defendant has not met its burden of proof under section 7429(g)(1) and that the termination assessment against the plaintiff was unreasonable under the circumstances.

■ Since the court finds that the making of the termination assessment was unreasonable under the circumstances, the court does not have to reach the question of whether the amount assessed was reasonable under section 7429(g)(2). The court would like to note, however, that if we had found the assessment to be reasonable under section 7429(g)(1), the court would have found the amount of the assessment to be unreasonable under section 7429(g)(2). There is little amplification on the boundaries of "reasonableness" as used in section 7429. After struggling to identify some parameters, the court in *Loretto v. United States,* 440 F.Supp. 1168 (E.D.Pa. 1977), concluded that "reasonable under the circumstances" as used in section 7429 "means something more than not arbitrary or capricious and something less than supported by substantial evidence." *Id.* at 1172. On a continuum with arbitrary and capricious at one end and substantial evidence at the other, the termination assessment in this case falls uncomfortably near the arbitrary and capricious end of the continuum.

The defendant bases its assessment primarily upon the cash found in the possession of Garzon and refers the court to a

laundry list of cases supporting their contention that where there were large amounts of cash in a taxpayer's possession, then there is automatically a reasonable conclusion that there is taxable income. *Loretto v. United States,* 440 F.Supp. 1168 (E.D.Pa.1977); *Ratzlaff v. United States,* 52 AFTR 2d 83–5438 (W.D.Wis.1983); *Billig v. United States,* 49 AFTR 2d 82–479 (N.D.Ga.1981); *Serpa v. United States,* 47 AFTR 2d 81–1281 (D.Neb.1981); *Auth. v. United States,* 45 AFTR 2d 80–756 (D.Utah 1979); *Lace v. United States,* 45 AFTR 2d 80–367 (D.Vt.1979); *McAvoy v. Internal Revenue Service,* 44 AFTR 2d 79–5337 (W.D.Mich.1979); *Noell v. United States,* 43 AFTR 2d 79–1194 (S.D.Cal.1979); *Erath v. United States,* 43 AFTR 2d 79–1192 (S.D.Cal.1979); *Santini v. United States,* 43 AFTR 2d 79–885 (N.D.Cal.1979); *Nichols v. United States,* 43 AFTR 2d 79–835 (E.D.Cal.1979); *Gaston v. United States,* 43 AFTR 2d 79–470 (N.D.Ga.1978). All of the cases couple the cash factor with some proven criminal activity such as drug trafficking or gambling. In this case, there is no insinuation or suspicion that Garzon was engaged in any sort of criminal activity. In addition, the court is satisfied that the currency found in the plaintiff's possession was derived from a non-taxable source.

Under section 7429(b)(3), if the district court determines that the making of the assessment is unreasonable, then the court may order the Secretary to abate the assessment. Accordingly, it is

ORDERED AND ADJUDGED that:

1. Judgment for the plaintiff, Jorge E. Garzon, and against the defendant, United States of America, is entered in the amount of $38,346.00.

2. Defendant shall abate its termination assessment in the amount of $38,346.00 made against the plaintiff, Jorge E. Garzon.

3. Defendant shall release any liens recorded by the defendant in connection with termination assessment by recording such releases as are appropriate under the terms of this Order.

4. Within 15 days from the date of this Order, the plaintiff shall submit to the court an application for attorney's fees delineating the time spent, the work done, and amount claimed on each item, and expenses supported by two affidavits regarding reasonableness of the attorney's fees. Defendant may submit two counter affidavits within 15 days after service of plaintiff's application.