STEBCO, INC., a California Corporation, Rafael Carrillo–Barron, an individual, Norma Fregoso Carrillo, an individual, Construcciones Industriales Otay, S.A. de C.V., a Mexican Corporation, Edificaciones Industriales Omar, S.A. de C.V., a Mexican Corporation, Concretos Ati, S.A. de C.V., a Mexican Corporation, Agregados Tijuana, S.A. de C.V., a Mexican Corporation, Ferreteria El Clavo, S.A. de C.V., a Mexican Corporation, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 90–0149R(IEG).

United States District Court, S.D. California.

March 12, 1990.

Richard A. Shaw and Charles W. Becker, Shenas, Shaw & Spievak, San Diego, Cal., for plaintiffs.

Greg Addington, U.S. Dept. of Justice, Tax Div., Washington, D.C., for defendant.

ORDER DENYING DEFENDANT'S MO-
TION TO DISMISS; GRANTING
PLAINTIFFS' MOTION FOR ABATE-
MENT OF JEOPARDY ASSESS-
MENT

RHOADES, District Judge.

## BACKGROUND

On February 2, 1990, plaintiffs filed a complaint to determine the reasonableness and appropriateness of two jeopardy assessments levied against them by the Internal Revenue Service ("IRS"). The jeopardy assessment made by the IRS against Stebco, Inc. ("Stebco") and the individual taxpayers resulted from an IRS investigation.[1] The IRS gathered the following information, which was presented to the court by way of declaration of a Revenue Agent, Beatriz Cruz:[2]

1. Stebco failed to cooperate with Cruz, provided misleading and inconsistent information, and represented that it was exempt from United States internal revenue laws. Stebco's 1988 income tax return was overdue.

2. Stebco appeared to have no business address other than a telephone answering service and freight forwarding service. The assets of Stebco were believed to be easily liquidated and transferred out of the reach of the IRS.

3. Stebco's sole shareholder was Rafael Carrillo–Barron. Carrillo–Barron and his wife, Norma Fregoso Carrillo, are the individual taxpayers who were also investigated (husband and wife hereinafter referred to as "the individual taxpayers").

4. The individual taxpayers filed W–8 forms with various banks and brokerage houses despite the fact that they were not nonresident aliens during 1986 and 1987.

5. The individual taxpayers declined to produce income tax returns requested by the IRS agents.

6. The individual taxpayers failed to file appropriate federal income tax returns for 1986 and 1987 despite being residents of the United States.

7. The individual taxpayers used false taxpayer identification numbers in connection with bank accounts, which concealed the accounts from the IRS.

8. The individual taxpayers' claim that they were nonresident aliens during 1986 and 1987 was false as they owned a home in Bonita, California at that time.

9. Mr. Carrillo–Barron had a "green card" identifying him as a permanent resident alien and has applied for amnesty through the Immigration and Naturalization Service. He claimed to be a Mexican national but stated on his marriage license application (in 1974) that he was born in California and that his mother was American.

10. Mrs. Fregoso Carrillo claimed to have recently renounced her American citizenship and claimed on her marriage license application that she was a Mexican citizen. She and her husband moved to Tijuana, Mexico, in 1988 with the apparent intention of remaining residents of Mexico. Their home in Bonita was vacated and placed on the market for sale.

11. According to Stebco's authorized representative, Carrillo–Barron was not cooperating with the IRS because he believed the corporation and himself to be exempt from taxation.

12. According to the individual taxpayers' accountant, Stebco and the individual taxpayers avoided the payment of appropriate custom duties to the Mexican government by misrepresenting the nature and value of the merchandise being exported.

13. The assets of the individual taxpayers consisted of cash accounts, which could be easily transferred out of the reach of the IRS, and the home in Bonita. The IRS

---

1. The parties have acknowledged that the relief sought by the five "non-taxpayer plaintiffs" is now moot due to actions taken by the parties.

2. The plaintiffs have moved to strike substantial portions of the IRS declaration based on hearsay objections. For the reasons set forth in this opinion, this court finds that this declaration as a whole is not probative of the truth of the matter asserted therein. Thus, the plaintiffs' motion is moot.

was informed by neighbors that the home was sold.

Based on the above information, the IRS believed that Stebco and the individual taxpayers were or appeared to be designing quickly to place themselves and/or their assets beyond the reach of the IRS. Accordingly, on September 25, 1989, the IRS made a jeopardy assessment against Stebco in the amount of $304,115.82, and against the individual taxpayers in the amount of $234,437.00 each. The amounts of jeopardy assessments were computed based upon constructive dividends being paid by Stebco to the individual taxpayers and the use of an individual federal income tax return for the individual taxpayers.

Stebco and the individual taxpayers have petitioned this court for review of that assessment.

## DISCUSSION

*1. Government's Motion to Dismiss the Individual Taxpayers*

■ Under 26 U.S.C. § 7429, an action for abatement of a jeopardy assessment must be brought in the judicial district described in § 1402(a)(1) or (2) of Title 28, U.S. Code. Section 1402(a)(1) provides that the proper district in the case of an individual plaintiff is "the judicial district where the plaintiff resides." As the individual taxpayers are nonresident aliens, the government argues that they may not maintain an action in this court. The government contends that these plaintiffs must pursue their remedy in Tax Court.

Two cases support the government's position: *Bigio v. United States,* 710 F.Supp. 790 (S.D.Fla.1988); and *Bautista v. United States,* (CCH) 88–2 U.S.T.C. ¶ 9599 (N.D. Cal.1988). However, this court declines to follow the reasoning of those cases, and instead finds support in *Williams v. United States,* 704 F.2d 1222 (11th Cir.1983) and *Garzon v. United States,* 605 F.Supp. 738 (S.D.Fla.1985).

First, *Bigio* and *Bautista* were decided after *Williams,* the only appellate court case that discusses the right of a nonresident alien to sue in a district court in a jeopardy assessment proceeding. However, neither district court addressed the *Williams* decision.

Second, *Bigio* and *Bautista* relied upon cases in which the plaintiffs were nonresident alien taxpayers attempting to file suits for the refund of taxes.[3] In such cases, the constitutional rights of the plaintiffs were not implicated because they had the same remedy available to them, but had to pursue the remedy in the Tax Court or the Court of Claims. Consequently, the cases simply involved a choice of forum issue and raised no serious due process concerns. *See, e.g., Malajalian v. United States,* 504 F.2d 842, 844 n. 1 ("While an alien who must sue in the Court of Claims lacks the choice between forums available to a resident and may incur additional time and travel costs, this slight unequal treatment does not amount to a convincing Equal Protection claim in view of Congress' apparent desire to have all alien suits brought in one court, the Court of Claims").

In contrast, denying the plaintiffs the right to a prompt post-seizure hearing in a jeopardy assessment proceeding necessarily gives rise to questions concerning a plaintiff's due process rights under the Fifth Amendment of the United States Constitution. *Williams,* 704 F.2d at 1227 n. 5; *see also Commissioner v. Shapiro et. ux.,* 424 U.S. 614, 629, 96 S.Ct. 1062, 1071, 47 L.Ed.2d 278 (1976). "The provisions for swift review in section 7429 ... suggest that Congress was ... aware that such assessments are made by the [IRS] without time to fully investigate all the factors required for a proper determination as to whether the making of the assessment was reasonable and/or the amount assessed was appropriate." *Garzon,* 605 F.Supp. at 743. Like the plaintiff in *Garzon,* the

---

3. *See, e.g., Malajalian v. United States,* 504 F.2d 842 (1st Cir.1974); *Shaw v. United States,* 422 F.Supp. 339 (S.D.N.Y.1976). *Bigio* indirectly finds support in these two cases by citing to

*Botero v. United States,* 560 F.Supp. 616 (S.D. Fla.1983), while *Bautista* directly cites to these cases.

present plaintiffs had no opportunity to present their case or be heard in court before the seizure of their assets—in effect, the plaintiffs have been "saddled with all of the burdens and obligations of taxation yet the Government contends that [they are] not entitled to the expedited remedies allowed to all other taxpayers." *Id.*

Further, allowing resident aliens to seek review in a federal district court while forcing nonresident aliens to pursue a remedy—one that is not likely to be prompt—in the Tax Court or Court of Claims raises equal protection problems. There can be no rational basis for this rule. *See id.* citing *Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982).

This court scrutinizes the constitutionality of § 1402(a)(1) only as applied to the present case. *See Broadrick v. Oklahoma,* 413 U.S. 601, 610–612, 93 S.Ct. 2908, 2914–16, 37 L.Ed.2d 830 (1973); *United States v. Raines,* 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960). As the Supreme Court has consistently extended due process and equal protection to aliens without regard to resident or nonresident status, this court holds that a nonresident alien taxpayer may establish venue under 28 U.S.C. § 1402(a)(1) for purposes of contesting a jeopardy assessment. *See Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382.

### 2. Plaintiffs' Motion for Abatement of Jeopardy Assessment

Generally, the United States may not assess and collect taxes until a statutory notice of deficiency has been issued to the taxpayer, enabling the taxpayer to seek pre-collection review by the Tax Court. A jeopardy assessment, however, allows the IRS to protect revenues believed due from a taxpayer who appears to be designing "to do an act which would tend to prejudice proceedings to collect the income tax." Treas.Reg. § 1.6851–1(a)(1). Consequently, the IRS may freeze the assets of the taxpayer until the question of liability is determined.

Under § 7429(b)(2), the district court shall determine whether the making of the jeopardy assessment is reasonable under the circumstances, and whether the amount assessed is appropriate under the circumstances. If the court determines that the assessment is unreasonable, or the amount inappropriate, the court may order abatement, redetermination of the assessment, or other such action as the court deems appropriate. 26 U.S.C. § 7429(b)(3). The district court's determination in a case such as this is nonreviewable. 26 U.S.C. § 7429(f).

■ The district court should make a *de novo* determination of whether the making of the assessment was reasonable. 26 U.S.C. § 7429. Accordingly, a court may consider not only information available to the IRS at the time of the assessment, but also any relevant information gathered after that date. *See, e.g., Perillo v. United States,* (CCH) 86–2 U.S.T.C. ¶ 9638 (E.D.N.Y.1986); *Bean v. United States,* 618 F.Supp. 652, 657 (D.C.Ga.1985); *Miller v. United States,* 615 F.Supp. 781, 785 (D.C. Ohio 1985); *Revis v. United States,* 558 F.Supp. 1071, 1074–75 (D.R.I.1983); *Berkery v. United States,* 544 F.Supp. 1, 5 (E.D.Pa.1982); *McAvoy v. Internal Revenue Service,* 475 F.Supp. 297, 298 (W.D. Mich.1979). The court may consider evidence which would not be admissible at a trial. *Hecht v. United States,* 609 F.Supp. 264, 266 (S.D.N.Y.19895). This *de novo* review is not, however, a trial on the merits of plaintiff's tax liabilities; the determination has no effect on a subsequent tax proceeding. *See Loretto v. United States,* 440 F.Supp. 1168, 1175 (E.D.Pa.1977).

■ The government bears the burden of proving that the making of the assessment was reasonable under the circumstances. 26 U.S.C. § 7429(g)(1). "Reasonable" has been defined as "something more than not arbitrary and capricious, and something less than supported by substantial evidence." *See* S.Rep. No. 94–938, 94th Cong., 2d Sess. 365 (1976), U.S.Code Cong. & Admin.News 1976, p. 2897.

■ The standards to be employed in determining whether a jeopardy assessment is reasonable are (1) whether the taxpayer is or appears to be planning to quick-

ly depart from the United States or to otherwise conceal himself or herself; (2) whether the taxpayer is or appears to be designing to place his or her property beyond the reach of the government either by removing it from the United States, or by concealing it or transferring it to other persons; or (3) whether the taxpayer's financial solvency appears to be imperiled. *Perillo*, 86–2 U.S.T.C. ¶ 9638 at 85, 479 *citing Cantillo v. Coleman*, 559 F.Supp. 205, 207 (D.N.J.1983).

■ Here, the government contends that the plaintiffs were or appeared to be designing quickly to place themselves and/or their assets beyond the reach of the IRS. Were this court to consider only the information available to the IRS agent at the time the assessment decision was made, this court would have little difficulty concluding that the assessment was reasonable. However, considering all evidence available to date, this court finds that the assessment was not reasonable.

First, much of the information in the IRS declaration has been refuted by several credible declarations submitted by the plaintiffs. More importantly, several infirmities in the IRS declaration cast doubt on the overall probative value of the document.

For example, the IRS agent relied on the statement of an unnamed neighbor and alleged that the taxpayers "may have sold the major known asset, the residence on Greenwood Drive." This assertion is incorrect. This court has been provided with the affidavit of a vice president of a title company which establishes that the individual taxpayers are the owners of the Bonita house. The taxpayers owned the house at the time of the jeopardy assessments and currently own the house.[4] What is most troublesome to this court is that this is an easily discoverable fact: an IRS agent need only check with the County Recorder's Office to uncover such information.

Also, IRS allegations that Carrillo–Barron held a "green card" with No. 4781707 is incorrect. In fact, Carrillo–Barron owned a nonresident alien border crossing card, No. 4781707, a copy of which has been attached as an exhibit to his declaration.

Because of his nonresident status, Carrillo–Barron was not required to obtain a Certificate of Compliance for departing aliens. Treas.Reg. § 1.6851–2(a)(2)(d). Moreover, Carrillo–Barron asserts, by way of affidavit, that he was advised by his accountants that he was a nonresident alien for income tax purposes, and as such, he was under no requirement to file United States income tax returns.

Further, the Carrillos' marriage certificate, which has been presented to this court as an exhibit, evidences an agreement to treat any property acquired during the marriage as separate property. Thus, it appears that Norma Fregoso Carrillo at no time earned income in an amount requiring her to file a United States income tax return.

By way of a bank manager's affidavit, the plaintiffs have refuted IRS allegations that they provided a bank with a false taxpayer identification number. Also, plaintiff Carrillo–Barron admits to filing W–8 Forms, but claims that he did this on the advice of investment firms, and did not intend to conceal the accounts from the IRS. Plaintiff has attached as an exhibit the information he received from the investment firms. Moreover, by way of several credible declarations, plaintiffs have established that they began building a home in Tijuana, Mexico in late 1984, and moved in upon completion in late 1987. The Carrillos resided at all times after December 1987 in Mexico.

Finally, plaintiffs have again showed, by way of trustworthy declarations, that Stebco was not designing to place its property beyond the reach of the IRS. Selling properties was part of Stebco's business, but at the time of the jeopardy assessment, Stebco held at least six parcels of real property

---

4. While the property was put up for sale during the summer of 1988, it was taken off the market one year before the jeopardy assessment. *See* declaration of real estate broker, Paul R. Ka-

pler. Moreover, there was "no appearance that [p]laintiff was attempting to sell the residential property quickly or at a loss." *Penner v. United States*, 582 F.Supp. 432, 435 (1984).

with a cost of over $1,400,000 and a net fair market value of between $2,500,000 and $3,000,000. The IRS has presented no evidence that Stebco was attempting to sell this property quickly or at a loss. *See Penner v. United States*, 582 F.Supp. 432, 435 (1984). There are no mortgages, deeds of trust, or other liens on these properties (other than possible IRS liens imposed as a result of these proceedings).

While plaintiffs acknowledge that Stebco's 1988 corporate income tax return was filed late, they assert that much of the delay was caused by the imposition of the jeopardy assessments. The government does not dispute that all prior tax returns were timely filed.

In sum, the government has not carried its burden of showing that the plaintiffs were or appeared to be designing to quickly place themselves and/or their assets beyond the reach of the IRS. The plaintiffs have submitted evidence that they own a house and parcels of real property in the area, the total value of which exceeds the amount of the government's lien. Assuming that the property is of the value stated and is free from encumbrances, the jeopardy assessment is not reasonable to protect the interests of the IRS. *See Perillo*, 86–2 U.S.T.C. ¶ 9638. It is hereby ordered that the jeopardy assessment imposed upon the plaintiffs be abated.

IT IS SO ORDERED.