362 U.S. 17
 80 S.Ct. 519
 4 L.Ed.2d 524
 UNITED STATES, Appellant,
v.
James Griggs RAINES et al.
 No. 64.
 Argued Jan. 12, 1960.
 Decided Feb. 29, 1960.
 
 [Syllabus from pages 17-18 intentionally omitted]
 Attorney General William P. Rogers, Washington, D.C., for appellant.
 Mr. Charles J. Bloch, Macon, Ga., for the appellees.
 Mr. Justice BRENNAN delivered the opinion of the Court.
 
 
 1
 The United States brought this action in the United States District Court for the Middle District of Georgia against the members of the Board of Registrars and certain Deputy Registrars of Terrell County, Georgia. Its complaint charged that the defendants had through various devices, in the administration of their offices, discriminated on racial grounds against Negroes who desired to register to vote in elections conducted in the State. The complaint sought an injunction against the continuation of these discriminatory practices, and other relief.
 
 
 2
 The action was founded upon R.S. § 2004, as amended by § 131 of the Civil Rights Act of 1957, 71 Stat. 637, 42 U.S.C. § 1971, 42 U.S.C.A. § 1971. Subsections (a) and (c), which are directly involved, provide:[1]
 
 
 3
 '(a) All citizens of the United States who are otherwise qualified by law to vote at any election by the people in any State, Territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous condition of servitude; any constitution, law, custom, usage, or regulation of any State or Territory, or by or under its authority, to the contrary notwithstanding.
 
 
 4
 '(c) Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice which would deprive any other person of any right or privilege secured by subsection (a) * * *, the Attorney General may institute for the United States, or in the name of the United States, a civil action or other proper proceeding for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order. * * *'
 
 
 5
 On the defendants' motion, the District Court dismissed the complaint, holding that subsection (c) was unconstitutional. 172 F.Supp. 552. The court held that the statutory language quoted allowed the United States to enjoin purely private action designed to deprive citizens of the right to vote on account of their race or color. Although the complaint in question involved only official action, the court ruled that since, in its opinion, the statute on its face was susceptible of application beyond the scope permissible under the Fifteenth Amendment, it was to be considered unconstitutional in all its applications. The Government appealed directly to this Court and we postponed the question of jurisdiction to the hearing of the case on the merits. 360 U.S. 926, 79 S.Ct. 1448, 3 L.Ed.2d 1541. Under the terms of 28 U.S.C. § 1252, 28 U.S.C.A. § 1252, the case is properly here on appeal since the basis of the decision below in fact was that the Act of Congress was unconstitutional, no matter what the contentions of the parties might be as to what its proper basis should have been.
 
 
 6
 The very foundation of the power of the federal courts to declare Acts of Congress unconstitutional lies in the power and duty of those courts to decide cases and controversies properly before them. This was made patent in the first case here exercising that power—'the gravest and most delicate duty that this Court is called on to perform.'[2] Marbury v. Madison, 1 Cranch 137, 177— 180, 2 L.Ed. 60. This Court, as is the case with all federal courts, 'has no jurisdiction to pronounce any statute, either of a state or of the United States, void, because irreconcilable with the constitution, except as it is called upon to adjudge the legal rights of litigants in actual controversies. In the exercise of that jurisdiction, it is bound by two rules, to which it has rigidly adhered: one, never to anticipate a question of constitutional law in advance of the necessity of deciding it; the other, never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.' Liverpool, New York & Philadelphia S.S. Co. v. Commissioners of Emigration, 113 U.S. 33, 39, 5 S.Ct. 352, 355, 28 L.Ed. 899. Kindred to these rules is the rule that one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional. United States v. Wurzbach, 280 U.S. 396, 50 S.Ct. 167, 74 L.Ed. 508; Heald v. District of Columbia, 259 U.S. 114, 123, 42 S.Ct. 434, 435, 66 L.Ed. 852; Yazoo & Mississippi Valley R. Co. v. .jackson Vinegar Co., 226 U.S. 217, 33 S.Ct. 40, 57 L.Ed. 193; Collins v. State of Texas, 223 U.S. 288, 295—296, 32 S.Ct. 286, 288, 56 L.Ed. 439; People of State of New York ex rel. Hatch v. Reardon, 204 U.S. 152, 160—161, 27 S.Ct. 188, 190—191, 51 L.Ed. 415. Cf. Voeller v. Neilston Warehouse Co., 311 U.S. 531, 537, 61 S.Ct. 376, 379, 85 L.Ed. 322; Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 513, 57 S.Ct. 868, 874, 81 L.Ed. 1245; Virginian R. Co. v. System Federation, 300 U.S. 515, 558, 57 S.Ct. 592, 605, 81 L.Ed. 789; Blackmer v. United States, 284 U.S. 421, 442, 52 S.Ct. 252, 257, 76 L.Ed. 375; Roberts & Schaefer Co. v. Emmerson, 271 U.S. 50, 54 55, 46 S.Ct. 375, 376—377, 70 L.Ed. 827; Jeffrey Mfg. Co. v. Blagg, 235 U.S. 571, 576, 35 S.Ct. 167, 169, 59 L.Ed. 364; Tyler v. Judges of the Court of Registration, 179 U.S. 405, 21 S.Ct. 206, 45 L.Ed. 252; Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 347—348, 56 S.Ct. 466, 483—484, 80 L.Ed. 688 (concurring opinion). In Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586, this Court developed various reasons for this rule. Very significant is the incontrovertible proposition that it 'would indeed be undesirable for this Court to consider every conceivable situation which might possibly arise in the application of complex and comprehensive legislation.' Id., 346 U.S. at page 256, 73 S.Ct. at page 1035. The delicate power of pronouncing an Act of Congress unconstitutional is not to be exercised with reference to hypothetical cases thus imagined. The Court further pointed to the fact that a limiting construction could be given to the statute by the court responsible for its construction if an application of doubtful constitutionality were in fact concretely presented. We might add that application of this rule frees the Court not only from unnecessary pronouncement on constitutional issues, but also from premature interpretations of statutes in areas where their constitutional application might be cloudy.
 
 
 7
 The District Court relied on, and appellees urge here, certain cases which are said to be inconsistent with this rule and with its closely related corollary that a litigant may only assert his own constitutional rights or immunities. In many of their applications, these are not principles ordained by the Constitution, but constitute rather 'rule(s) of practice,' Barrows v. Jackson, supra, 346 U.S. at page 257, 73 S.Ct. at page 1035, albeit weighty ones; hence some exceptions to them where there are weightly countervailing policies have been and are recognized. For example, where, as a result of the very litigation in question, the constitutional rights of one not a party would be impaired, and where he has no effective way to preserve them himself, the Court may consider those rights as before it. N.A.A.C.P. v. State of Alabama, 357 U.S. 449, 459—460, 78 S.Ct. 1163, 1170—1171, 2 L.Ed.2d 1488; Barrows v. Jackson, supra. This Court has indicated that where the application of these rules would itself have an inhibitory effect on freedom of speech, they may not be applied. See Smith v. People of State of California, 361 U.S. 147, 151, 80 S.Ct. 215, 217, 4 L.Ed.2d 205; Thornhill v. State of Alabama, 310 U.S. 88, 97—98, 60 S.Ct. 736, 741—742, 84 L.Ed. 1093. Perhaps cases can be put where their application to a criminal statute would necessitate such a revision of its text as to create a situation in which the statute no longer gave an intelligible warning of the conduct it prohibited. See United States v. Reese, 92 U.S. 214, 219—220, 23 L.Ed. 563; cf. Winters v. People of State of New York, 333 U.S. 507, 518—520, 68 S.Ct. 665, 671—672, 92 L.Ed. 840. And the rules' rationale may disappear where the statute in question has already been declared unconstitutional in the vast majority of its intended applications, and it can fairly be said that it was not intended to stand as valid, on the basis of fortuitous circumstances, only in a fraction of the cases it was originally designed to cover. See Butts v. Merchants & Miners Transportation Co., 230 U.S. 126, 33 S.Ct. 964, 57 L.Ed. 1422. The same situation is presented when a state statute comes conclusively pronounced by a state court as having an otherwise valid provision or application inextricably tied up with an invalid one, see Dorchy v. State of Kansas, 264 U.S. 286, 290, 44 S.Ct. 323, 325, 68 L.Ed. 686;[3] or possibly in that rarest of cases where this Court can justifiably think itself able confidently to discern that Congress would not have desired its legislation to stand at all unless it could validly stand in its every application. Cf. The Trade-Mark Cases, 100 U.S. 82, 97—98, 25 L.Ed. 550; The Employers' Liability Cases, 207 U.S. 463, 501, 28 S.Ct. 141, 146, 52 L.Ed. 297. But we see none of the countervailing considerations suggested by these examples, or any other countervailing consideration, as warranting the District Court's action here in considering the constitutionality of the Act in applications not before it.[4] This case is rather the most typical one for application of the rules we have discussed.
 
 
 8
 There are, to be sure, cases where this Court has not applied with perfect consistency these rules for avoiding unnecessary constitutional determinations,[5] and we do not mean to say that every case we have cited for various exceptions to their application was considered to turn on the exception stated, or is perfectly justified by it. The District Court relied primarily on United States v. Reese, supra. As we have indicated, that decision may have drawn support from the assumption that if the Court had not passed on the statute's validity in toto it would have left standing a criminal statute incapable of giving fair warning of its prohibitions. But to the extent Reese did depend on an approach inconsistent with what we think the better one and the one established by the weightiest of the subsequent cases, we cannot follow it here.
 
 
 9
 Accordingly, if the complaint here called for an application of the statute clearly constitutional under the Fifteenth Amendment, that should have been an end to the question of constitutionality. And as to the application of the statute called for by the complaint, whatever precisely may be the reach of the Fifteenth Amendment, it is enough to say that the conduct charged—discrimination by state officials, within the course of their official duties, against the voting rights of United States citizens, on grounds of race or color—is certainly, as 'state action' and the clearest form of it, subject to the ban of that Amendment, and that legislation designed to deal with such discrimination is 'appropriate legislation' under it. It makes no difference that the discrimination in question, if state action, is also violative of state law. Snowden v. Hughes, 321 U.S. 1, 11, 64 S.Ct. 397, 403, 88 L.Ed. 497. The appellees contend that since Congress has provided in subsection (d) of the statutory provision in question here that the District Courts shall exercise their jurisdiction 'without regard to whether the party aggrieved shall have exhausted any administrative or other remedies that may be provided by law,' and since such remedies were not exhausted here, appellees' action cannot be ascribed to the State. The argument is that the ultimate voice of the State has not spoken, since higher echelons of authority in the State might revise the appellees' action. It is, however, established as a fundamental proposition that every state official, high and low, is bound by the Fourteenth and Fifteenth Amendments. See Cooper v. Aaron, 358 U.S. 1, 16—19, 78 S.Ct. 1401, 1408—1410, 3 L.Ed.2d 5. We think this Court has already made it clear that it follows from this that Congress has the power to provide for the correction of the constitutional violations of every such official without regard to the presence of other authority in the State that might possibly revise their actions. The appellees can draw no support from the expressions in Barney v. City of New York, 193 U.S. 430, 24 S.Ct. 502, 48 L.Ed. 737, on which they so much rely.[6] The authority of those expressions has been 'so restricted by our later decisions,' see Snowden v. Hughes, supra, 321 U.S. at page 13, 64 S.Ct. at page 403, that Barney must be regarded as having 'been worn away by the erosion of time,' Tigner v. State of Texas, 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124, and of contrary authority. See Raymond v. Chicago Union Traction Co., 207 U.S. 20, 37, 28 S.Ct. 7, 13, 52 L.Ed. 78; Home Telephone & Telegraph Co. v. City of Los Angeles, 227 U.S. 278, 283—289, 294, 33 S.Ct. 312, 313—315, 317, 57 L.Ed. 510; Iowa-Des Moines Nat. Bank v. Bennett, 284 U.S. 239, 247, 52 S.Ct. 133, 136, 76 L.Ed. 265; Snowden v. Hughes, supra; Screws v. United States, 325 U.S. 91, 107—113, 116, 65 S.Ct. 1031, 1038—1041, 1043, 89 L.Ed. 1495. Cf. United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368. It was said of Barney's doctrine in Home Telephone & Telegraph Co. v. City of Los Angeles, supra, 227 U.S. at page 284, 33 S.Ct. at page 314, by Mr. Chief Justice White: '(its) enforcement * * * would * * * render impossible the performance of the duty with which the Federal courts are charged under the Constitution.' The District Court seems to us to have recognized that the complaint clearly charged a violation of the Fifteenth Amendment and of the statute, and that the statute, if applicable only to this class of cases, would unquestionably be valid legislation under that Amendment. We think that under the rules we have stated, that court should then have gone no further and should have upheld the Act as applied in the present action, and that its dismissal of the complaint was error.
 
 
 10
 The appellees urge alternative grounds on which they seek to support the judgment of the District Court dismissing the complaint.[7] We do not believe these grounds are well taken. It is urged that it is beyond the power of Congress to authorize the United States to bring this action in support of private constitutional rights. But there is the highest public interest in the due observance of all the constitutional guarantees, including those that bear the most directly on private rights, and we think it perfectly competent for Congress to authorize the United States to be the guardian of that public interest in a suit for injunctive relief. See United Steelworkers of America v. United States, 361 U.S. 39, 43, 80 S.Ct. 1, 4, 4 L.Ed.2d 12, and cases cited. Appellees raise question as to the scope of the equitable discretion reserved to the courts in suits under § 2004. Cf. Id., 361 U.S. at pages 41—42, 80 S.Ct. at pages 3—4. We need not define the scope of the discretion of a District Court in proceedings of this nature, because, exercising a traditional equity discretion, the court below declined to dismiss the complaint on that ground, and we do not discern any basis in the present posture of the case for any contention that it has abused its discretion. Questions as to the relief sought by the United States are posed, but remedial issues are hardly properly presented at this stage in the litigation.
 
 
 11
 The parties have engaged in much discussion concerning the ultimate scope in which Congress intended this legislation to apply, and concerning its constitutionality under the Fifteen Amendment in these various applications. We shall not compound the error we have found in the District Court's judgment by intimating any views on either matter.
 
 
 12
 Reversed.
 
 
 13
 Mr. Justice FRANKFURTER, with whom Mr. Justice HARLAN concurs, joining in the judgment.
 
 
 14
 The weighty presumptive validity with which the Civil Rights Act of 1957, like every enactment of Congress, comes here is not overborne by any claim urged against it. To deal with legislation so as to find unconstitutionality is to reverse the duty of courts to apply a statute so as to save it. Here this measure is sustained under familiar principles of constitutional law. Nor is there any procedural hurdle left to be cleared to sustain the suit of the United States. Whatever may have been the original force of Barney v. City of New York, 193 U.S. 430, 24 S.Ct. 502, 48 L.Ed. 737, that decision has long ceased to be an obstruction, nor is any other decision in the way of our result in this case. And so I find it needless to canvass the multitude of opinions that may generally touch on, but do not govern, the issues now before us.
 
 
 
 [1]
 Subsection (a) was originally § 1 of the Enforcement Act of May 31, 1870, c. 114, 16 Stat. 140, and was brought forward as R.S. § 2004. The remaining subsections were added by the 1957 legislation. Subsection (b) forbids various forms of intimidation and coercion in respect of voting for federal elective officers, and the enforcement provisions of subsection (c) likewise apply to it; but subsection (b) is not involved in this litigation.
 
 
 [2]
 Holmes, J., in Blodgett v. Holden, 275 U.S. 142, 148, 276 U.S. 594, 48 S.Ct. 105, 107, 72 L.Ed. 206.
 
 
 [3]
 Cf. Mountain Timber Co. v. State of Washington, 243 U.S. 219, 234, 37 S.Ct. 260, 263, 61 L.Ed. 685. But a State's determination of the class of persons who can invoke the protection of provisions of the Federal Constitution has been held not conclusive here. Tileston v. Ullman, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603.
 
 
 [4]
 Certainly it cannot be said that the sort of action proceeded against here, and validly reachable under the Constitution (see pages 25—26 of 362 U.S., pages 524—526 of 80 S.Ct. infra), was so small and inessential a part of the evil Congress was concerned about in the statute that these defendants should be permitted to make an attack on the statute generally. Subsection (d) and innumerable items in the legislative history show Congress' particular concern with the sort of action charged here. See, e.g., Hearings before the Subcommittee on Constitutional Rights of the Committee on the Judiciary, United States Senate, on Proposals to Secure, Protect, and Strengthen Civil Rights of Persons under the Constitution and Laws of the United States, 85th Cong., 1st Sess., pp. 4—7, 36—37, 77, 81, 189, 205, 293, 300; Hearings before Subcommittee No. 5 of the Committee on the Judiciary, House of Representatives, on Miscellaneous Bills Regarding the Civil Rights of Persons within the Jurisdiction of the United States, 85th Cong., 1st Sess., pp. 656, 1220; 103 Cong.Rec. 8705, 12149, 12898, 13126, 13732.
 Nor can there be any serious contention that the statute, as a civil enactment, would fail to give adequate notice of the conduct it validly proscribed, even if certain applications of it were to be deemed unconstitutional. Criminal proceedings under the statute must depend on violation of a restraining order embracing the party charged.
 
 
 [5]
 Cf., e.g., Illinois Central R. Co. v. McKendree, 203 U.S. 514, 27 S.Ct. 153, 51 L.Ed. 298; United States v. Ju Toy, 198 U.S. 253, 262—263, 25 S.Ct. 644, 646—647, 49 L.Ed. 1040.
 
 
 [6]
 Barney was a property owner's action to enjoin state officials from construction of a rapid transit tunnel in a particular place. The suit was brought directly under the Fourteenth Amendment in federal court, and it was averred that the proposed action of the state officials was not authorized under state law. It does not appear that the complainant alleged that higher state administrative echelons were indisposed to halt the unauthorized actions or that the State offered no remedy at all to a property owner threatened with intereference with his property by state officials acting without authority. There was not presented any specific federal statute expressly authorizing federal judicial intervention with matters in this posture.
 
 
 [7]
 Many of these contentions are raised by what appellees style a 'cross-appeal.' Notice of cross-appeal was filed in the District Court, but the cross-appeal was not docketed here. However, since the judgment of the District Court awarded appellees all the relief they requested (despite rejecting most of their contentions, except the contral one), no cross-appeal was necessary to bring these contentions before us if they can be considered otherwise. They would simply be alternative grounds on which the judgment below could be supported. In view of the broad nature of § 1252, which seems to indicate a desire of Congress that the whole case come up (contrast 18 U.S.C. § 3731, 18 U.S.C.A. § 3731, United States v. Borden Co., 308 U.S. 188, 193, 60 S.Ct. 182, 186, 84 L.Ed. 181), we have the power to pass on these other questions, and since the District Court expressed its views on most of them, we also deem it appropriate to do so.