DEPARTMENT OF PUBLIC HEALTH *v.* TOMPKINS

ORIGINAL OPINION

1. LICENSES—AGRICULTURAL LABOR CAMPS—UNLICENSED OPERATION
—EVIDENCE.

Finding that defendants were operating an agricultural labor
camp without a license was proper where the evidence showed
that defendants employed and housed on their farm more
than five out-of-county workers and defendants admitted the
employment of more than five such workers and their failure
to apply for a license to operate an agricultural labor camp
(MCLA §§ 286.621, 286.622).

ON REHEARING

2. CONSTITUTIONAL LAW—STATUTES—PARTIES—STANDING.

One cannot attack a statute on the ground that its application
denies constitutional protection to others.

3. LICENSES—AGRICULTURAL LABOR CAMPS—CONSTITUTIONAL LAW—
EQUAL PROTECTION—PARTIES—STANDING.

Defendants, operators of an unlicensed agricultural labor camp,
do not have standing to attack the statute requiring licensing
either on the ground that it discriminates against nonagri-
cultural migratory workers or on the ground that because
it applies only when five or more migratory workers are en-
gaged in agricultural activities, it discriminates against smaller
numbers of agricultural migratory workers (MCLA § 286.621
*et seq.*).

4. LICENSES—AGRICULTURAL LABOR CAMPS—MIGRATORY WORKERS—
STATUTES—DEFINITION—DUE PROCESS.

The term "migratory workers", as used in the act requiring
persons who operate agricultural labor camps for more than

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 4]  5 Am Jur 2d, Agriculture §§ 8, 9.
[2]  16 Am Jur 2d, Constitutional Law § 119 *et seq.*

five migratory workers to obtain a license, means those workers who move in response to the demand for seasonal labor and is reasonably certain, and its use therefore does not constitute a denial of due process (MCLA § 286.621 *et seq.*).

Appeal from Grand Traverse, Charles L. Brown, J. Submitted Division 3 May 5, 1971. (Docket No. 10028.) Decided May 26, 1971. Opinion on rehearing released August 12, 1971.

Complaint for injunction by the Michigan Department of Health against O. M. Tompkins and Bess Tompkins to restrain defendants from operating an unlicensed agricultural labor camp and from permitting persons to use facilities on their property which had been found unfit for human habitation. Permanent injunction granted. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Maxine Boord Virtue, Milton I. Firestone,* and *Arthur E. D'Hondt,* Assistants Attorney General, for plaintiff.

*John Rae,* for defendants.

Before: R. B. BURNS, P. J., and HOLBROOK and LEVIN, JJ.

### ORIGINAL OPINION

PER CURIAM. At trial level defendants were permanently enjoined from operating an agricultural labor camp without a license as required by the agricultural labor camps act[1] or permitting persons to use facilities on their premises which had been found to be unfit for human habitation.

---

[1] MCLA § 286.621 *et seq.* (Stat Ann 1968 Rev § 17.424[1] *et seq.*).

Plaintiff, who is given responsibility for enforcement of the agricultural labor camps act[2], had received a letter from defendants early in 1970 wherein defendants stated they would not operate an agricultural labor camp in 1970. Three months later plaintiff's field representative went to defendants' cherry orchard and allegedly discovered that defendants were, in fact, operating an agricultural labor camp without a license.

The trial court's findings of fact agree with the plaintiff's allegations:

"1. That the defendants, O. M. Tompkins and Bess Tompkins, are operating a cherry orchard located at 17107 Center Road, Peninsula Township, Grand Traverse County, Michigan and are providing living facilities on said premises for more than twenty (20) agricultural workers and their families, who are being paid by said defendants for harvesting cherries at said orchard, and who are not residents of Grand Traverse County.

"2. That said living facilities on said defendants-appellants aforesaid premises are unfit for human habitation and use, posing a threat to the health and welfare of the agricultural workers and their families residing in and using said facilities, and jeopardizing the public health.

"3. That said facilities and premises are subject to the provisions of Act 289, PA 1965, as amended and the rules and regulations promulgated thereunder, that said premises are not licensed under the provisions of said law, rules, and regulations, and no application for a license was made pursuant to said law, rules, and regulations because defendant-appellant O. M. Tompkins testified the defendants-appellants know an application would be denied, and the said premises and living facilities in their present

---

[2] MCLA § 286.631 (Stat Ann 1968 Rev § 17.424[11]).

condition do not meet the requirements of said law, rules, and regulations.

"4. That irreparable injury will result if this judgment does not issue, and as defendant O. M. Tompkins testified, the defendants-appellants will suffer no damage by the issuance of this judgment."

On appeal defendants claim that the evidence before the trial judge was not sufficient to support the injunction and therefore should be set aside by this Court. We review the testimony mindful of the rule that we cannot substitute our opinion for that of the trial judge unless his findings are clearly erroneous. GCR 1963, 517.1. See, also, *Potter* v. *Speer* (1969), 16 Mich App 329.

The agricultural labor camps act requires an operator of an "agricultural labor camp" to obtain a license from the state health commissioner before operating such a camp.[3] Defendants argue that they do not need an operator's license since they do not operate an agricultural labor camp.[4] "Agricultural labor camp" is defined in the act as:

"A tract of land and all tents, vehicles, buildings or other structures pertaining thereto, and part of which is established, occupied or used as living quarters for 5 or more migratory workers engaged in agricultural activities, including related food processing."[5]

It is the opinion of this Court that there was sufficient evidence to support the trial court's finding that defendants were operating an agricultural labor camp without a license. More than five out-of-county workers were employed by defendants and

[3] MCLA § 286.622 (Stat Ann 1968 Rev § 17.424[2]).
[4] Defendants do not challenge the validity of plaintiff's determination that the living facilities on their property were unsafe, unsanitary, unfit for human habitation, and a threat to the public health.
[5] MCLA § 286.621 (Stat Ann 1968 Rev § 17.424[1]).

were housed on defendants' farm. Mr. Tompkins admitted that he had more than five workers and that he had not applied for a license to operate an agricultural labor camp.[6]

Defendants' attack on the act's constitutionality will not be considered since they did not present this issue in the trial court proceedings.[7]

Affirmed. Costs to plaintiff.

## On Rehearing

R. B. Burns, P. J. Defendants filed a motion for rehearing[1] which was granted. The sole issue is:

"Does the agricultural labor camps act[2] violate defendants' state and/or federal constitutional rights of due process and equal protection?

Relying on the equal protection clause of the state[3] and Federal constitutions[4] defendants argue that the labor camps act subjects "non-agricultural" migratory workers to arbitrary and unreasonable discrimination.[5] Defendants also contend that the act, since it does not apply unless "5 or more migratory workers [are] engaged in agricultural ac-

---

[6] Mr. Tompkins was not ignorant of the law in this area. He had applied for and had received a license to operate an agricultural labor camp in 1966, 1967 and 1968. Since Mr. Tompkins' living facilities were deficient in those years he was granted a "provisional license" each year. See MCLA § 286.624(a) (Stat Ann 1968 Rev § 17.424[4][a]).

[7] See *Brookdale Cemetery Association* v. *Lewis* (1955), 342 Mich 14; *Mitchell* v. *Grewal* (1953), 338 Mich 81; *Diggs* v. *State Board of Embalmers and Funeral Directors* (1948), 321 Mich 508; *Bullerman* v. *Employment Security Commission* (1970), 25 Mich App 242.

[1] Defendants' motion for rehearing was granted June 23, 1971.

[2] PA 1965, No 289, MCLA § 286.621 *et seq.* (Stat Ann 1968 Rev § 17.424[1] *et seq.*).

[3] Const 1963, art 1, § 2.

[4] US Const, Am 14, § 1.

[5] Only "agricultural" migratory workers receive the enforced health and sanitation benefits provided by the act. See MCLA § 286.624 (Stat Ann 1968 Rev § 17.424[4]).

tivities", discriminates against smaller numbers of "agricultural" migratory workers.

Defendants, who seek to avoid complying with the act as "operators" of an agricultural labor camp,[6] do not argue that they are the subject of any discrimination.  In effect defendants are urging this Court to strike down the labor camps act on the ground that it discriminates against people who are not involved in this suit.  Such a decision would be premature and unnecessary.  One cannot attack a statute on the ground that its application denies constitutional protection to others.[7]

Defendants' due process argument is based on their contention that the meaning of "migratory worker" is so vague and indefinite that they, as farm owners, must act at their peril.[8]

The act provides that one must obtain a license to operate an agricultural labor camp.  "Agricultural labor camp" is defined in the act (MCLA § 286-.621[a] [Stat Ann 1968 Rev § 17.424(1)(a)]) as:

"A tract of land and all tents, vehicles, buildings or other structures pertaining thereto, and part of which is established, occupied or used as living quarters for 5 or more *migratory workers engaged in agricultural activities,* including related food processing."  (Emphasis supplied.)

Defendants argue that since the act does not define the term "migratory workers", they are unable

---

[6] We note that the financial burden which may be associated with compliance with the act is somewhat lessened by PA 1970, No 197, MCLA 1971 Cum Supp § 286.611 *et seq.* (Stat Ann 1971 Cum Supp § 17.425[11] *et seq.*) which makes grants up to $5,000 from the state available to the employers of migratory farm workers.

[7] *United States* v. *Raines* (1960), 362 US 17 (80 S Ct 519, 4 L Ed 2d 524).  See, also, *Wade* v. *Wilson* (1970), 396 US 282 (90 S Ct 501, 24 L Ed 2d 470).

[8] Violation of the act's provisions may result in a misdemeanor. MCLA 1971 Cum Supp § 286.633 (Stat Ann 1971 Cum Supp § 17-.424[13]).

to determine whether or not the people who harvest their cherries are migratory workers. We cannot agree with defendants' assertion that the term "migratory worker" is "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application".[9] Men of common-sense intelligence know that migratory workers are those workers who move in response to the demand for seasonal labor.[10] The meaning of the term "migratory worker" is reasonably certain and therefore does not constitute a denial of due process.

Affirmed.

All concurred.

---

[9] Quotation taken from *Connally* v. *General Construction Co.* (1926), 269 US 385, 391 (46 S Ct 126, 127; 70 L Ed 322, 328).

[10] See definition given "migratory" in Webster's Third New International Dictionary, p 1432.