UNITED STATES of America

v.

Robert ALLEY, U.S. Plating
Corporation, and Pioneer
Plating Company, Inc.

No. 89 CR 1008.

United States District Court,
N.D. Illinois, E.D.

June 11, 1990.

John Farrell, Asst. U.S. Atty., for U.S.

John L. Sullivan, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Robert Alley, U.S. Plating Corporation, and Pioneer Plating Company, Inc., have moved under Rule 12(b)(2), Fed.R.Crim. Pro., to dismiss the superseding indictment[1] against them for failing to state any offense on their part, or alternatively for failing to allege all of the necessary elements of an offense.[2] See *United States v. Gironda*, 758 F.2d 1201, 1209 (7th Cir.1985) (purposes of indictment are to "state all of the elements of the offense charged," "inform the defendant of the nature of the charge so that he may prepare a defense," and "enable the defendant to plead the judgment as a bar to any later prosecution for the same offense"); *U.S. v. Napue*, 834 F.2d 1311, 1316 (7th Cir.1987). Having reviewed the eighty-one counts of the indictment, the court concludes that each count states an offense and alleges all of the necessary elements of that offense. The court will thus deny the defendants' motion.

The indictment charges that at all times relevant to this case, Robert Alley was the President and owner of both U.S. Plating and Pioneer Plating, two Chicago-based electroplating companies. The defendants operated facilities which discharged an average of greater than 10,000 gallons of industrial wastewater per operating day into sewers connected to a publicly owned sewage treatment works (known in regulatory parlance as a "POTW") located in Chicago. The POTW in turn discharged into the Chicago Sanitary and Ship Canal, a navigable water of the United States.

Between January 3, 1985 and August 31, 1989, the wastewater discharged by the defendants on eighty-one different days contained various levels of cyanide, chromium, copper, lead, cadmium, nickel, and zinc in excess of those permitted under pretreatment standards promulgated by the Administrator of the U.S. Environmental Protection Agency ("EPA") in 40 C.F.R. §§ 413.10 et seq. (1989), pursuant to 33 U.S.C. § 1317(b) (1982). The defendants discharged this wastewater with varying degrees of intent. The indictment alleges in Counts 1–13 that Alley and U.S. Plating willfully and negligently discharged wastewater containing impermissible levels of pollutants between January 3, 1985, and August 20, 1986. It alleges in Counts 14–72 that between August 3, 1987, and August 31, 1989, these same defendants knowingly discharged illegal wastewater. In Counts 73–75, the indictment alleges that Alley and Pioneer Plating willfully and negligently discharged illegal wastewater between September 30, 1985, and April 17, 1986; it alleges in Counts 76–81 that similar discharges by Alley and Pioneer Plating were done knowingly.

Title 33 U.S.C. § 1319(c)(1) (1982) states: "Any person who willfully or negligently violates section ... 1317 of this title ...— shall be punished by a fine of not less than

---

1. The government filed this indictment on May 31, 1990, replacing one filed December 1, 1989.

2. The defendants argue further that the indictment does not permit them to prepare an adequate defense against it. The defendants do not state why, apart from the indictment's purported failure to state a claim or allege all of the elements of an offense.

$2,500 nor more than $25,000 per day of violation, or by imprisonment for not more than one year, or by both." After February 4, 1987, "[a]ny person who knowingly violates section ... 1317 ... shall be punished by a fine of not less than $5,000 nor more than $50,000 per day of violation, or by imprisonment for not more than 3 years, or both." 33 U.S.C. § 1319(c)(2)(A) (1987 Supp.).[3] Section 1317(d) of Title 33 provides: "After the effective date of any ... pretreatment standard promulgated under this section, it shall be unlawful for any owner or operator of any source to operate any source in violation of any such ... pretreatment standard." For purposes of § 1317(d), a "source" is "any building, structure, facility or installation from which there is or may be the discharge of pollutants." 33 U.S.C. § 1316(a)(3) (1982).

From these statutes the court discerns two different, yet similar, offenses. The indictment alleges both. The elements of the first offense, which stems from the pertinent version of § 1319(c)(1), are that the defendant (1) willfully and negligently (2) operated a source (3) in violation of a pretreatment standard promulgated under § 1317(b).[4] This offense is stated in each of Counts 1–13 and 73–75 of the indictment. The elements of the second offense, which stems from § 1319(c)(2)(A), are that the defendant (1) knowingly (2) operated a source (3) in violation of a pretreatment standard promulgated under § 1317(b).[5] This offense is stated in each of Counts 14–72 and 76–81.

The defendants contend that the indictment may not state an offense merely by claiming a violation of the pretreatment standards set forth under 40 C.F.R. Part 413. The defendants begin with 33 U.S.C. § 1317(b)(1), which states:

The Administrator shall [propose and properly promulgate] regulations establishing pretreatment standards for introduction of pollutants into [POTWs] for those pollutants which are determined not to be susceptible to treatment by such [POTW] or which would interfere with the operation of such [POTW].... Pretreatment standards ... shall be established to prevent the discharge of any pollutant through [POTWs], which pollutant interferes with, passes through, or otherwise is incompatible with such [POTW]. If, in the case of any toxic pollutant under subsection (a) of this section introduced by a source into a [POTW], the treatment by such [POTW] removes all or any part of such toxic pollutant and the discharge from such [POTW] does not violate that effluent limitation or standard which would be applicable to such toxic pollutant if it were discharged by such source other than through a [POTW], and does not prevent sludge use or disposal by such [POTW] in accordance with section 1345 of this title, then the pretreatment requirements for the sources actually discharging such toxic pollutant into such [POTW] may be revised by the owner or operator of such [POTW] to reflect the removal of such toxic pollutant by such [POTW].

The defendants suggest that this subsection has focused the Administrator's attention on POTWs, and thus a proper pretreatment standard should focus on the extent to which it regulates pollutants which "interfere[ ] with, pass[ ] through, or otherwise [are] incompatible" with the operations of the POTW which serves a particular source. Indeed, one can find such regulations. See 40 C.F.R. § 403.5 (prohibiting defined "users" of POTWs from introduc-

---

**3.** The Water Quality Act of 1987, Pub.L. 100–4, 101 Stat. 7, amended § 1319(c) to provide new penalties for knowing violations. The act also amended 33 U.S.C. § 1319(c)(1) (1982) as of February 4, 1987. See 33 U.S.C. § 1319(c)(1) (1987 Supp.). This amendment does not effect the charges stated in the indictment.

**4.** An indictment which stated in this third element simply that the defendant "violated a pretreatment standard issued pursuant to

§ 1317(b)" would be insufficient. The indictment must set forth a citation to the standard itself or facts from which one could reasonably determine what standard the defendant allegedly violated. See Charles Alan Wright, 1 Federal Practice and Procedure § 124 (West 1982).

**5.** See note 4 above as to the proper means of pleading this element of this offense.

ing pollutants which cause defined "Pass Through" or "Interference"). Assuming for the moment that 40 C.F.R. Part 413 states proper pretreatment standards, the defendants argue that since the indictment fails to allege anything about the effect of their discharges on the POTW which served the defendants' facilities, the indictment is deficient.

A careful review of the regulatory scheme which the Administrator has erected pursuant to § 1317(b) indicates that not every aspect of that scheme is as directly tied to the output of POTWs as the defendants contend. Instead, the Administrator has set up two different sets of regulations. See 52 Fed.Reg. 1585, 1586 (Jan. 14, 1987) (explaining recent history of regulation of POTWs). The first, found principally in 40 C.F.R. Part 403, governs those pollutants which pass through or interfere with the treatment processes of POTWs. See *id.* at § 403.1. These rules are entitled "General Pretreatment Regulations for Existing and New Sources of Pollution." Throughout the General Pretreatment Regulations, however, the Administrator asserts the power to enact regulations applicable to particular industries, independent of his or her power to govern the operations of or discharges from POTWs. See, for example, *id.* at § 403.5(a)(1) (general prohibitions of § 403.5 "apply to each User introducing pollutants into a POTW whether or not the User is subject to other National Pretreatment Standards or any national, State, or local Pretreatment Requirements"); *id.* at § 403.6 (National Pretreatment Standards unless noted otherwise "shall be in addition to the general prohibitions established in § 403.5 of this part"). Such independent, industry-specific regulations currently begin with 40 C.F.R. Part 405, and extend through and include the pretreatment standards applicable to certain electroplating firms in 40 C.F.R. Part 413.

Like the other industry-specific or so-called "national categorical" standards, those found in Part 413 expressly augment those in Part 403. See 52 Fed.Reg. 1526 (national categorical standards regulate industries in a manner separate from General Pretreatment regulations); 40 C.F.R. at § 413.14 ("any existing source subject to this subpart which introduces pollutants into a publicly owned treatment works must comply with 40 CFR Part 403 *and* achieve the following pretreatment standards for existing sources...."). Section 413.14's use of the word "and" indicates that the Administrator has chosen to regulate electroplating companies by controlling both a company's effect on its POTW, through the regulations set forth in Part 403, and the company's own discharges, through the standards appearing Part 413.

The defendants have not found any authority which suggests that the Administrator intended for the general standards contained in Part 403 to be predicates for the pretreatment standards set forth in Part 413. The defendants refer the court to *National Ass'n of Metal Finishers v. E.P.A.*, 719 F.2d 624 (3d Cir.1983) ("*NAMF*"), portions of which were reversed in *Chemical Manufacturers Assn. v. NRDC*, 470 U.S. 116, 105 S.Ct. 1102, 84 L.Ed.2d 90 (1985). There the court ordered the Administrator to redefine the term "interference" in Part 403 to bring it within Congress's intent in enacting the Federal Water Pollution Control Act Amendments of 1972, Pub.L. 92–240, 86 Stat. 47. The court also directed the Administrator to resubmit his definition of "pass through" in Part 403, as the Administrator had not promulgated it with proper notice and comment. The court noted, however, that these deficiencies in the General Pretreatment Regulations of Part 403 "play no part in either the setting or the administration" of the pretreatment standards found in Part 413. See *NAMF*, 719 F.2d at 638–41, 656 & n. 50; see also 52 Fed.Reg. 1587 (Administrator's response to *NAMF*; Administrator notes that his new definitions of "pass through" and "interference" do not play "a direct role" in national categorical standards).

■ The defendants contend that if this is how the Administrator envisions the regulation of discharges from electroplating firms, then the Administrator has acted outside of the authority delegated to him

under 33 U.S.C. § 1317(b), and thus the pretreatment regulations set forth in Part 413 are unlawful. This argument will not detain the court for long, as the court may not consider it. Title 33 § 1369(b)(1) (1982) provides for judicial review of any pretreatment standard issued under § 1317(b) in the circuit courts of appeals, not the district courts. Even then, a person must seek such judicial review within ninety days of the Administrator's promulgation of the standard.[6] Section 1369(b)(2) states: "Action of the Administrator with respect to which review could have been obtained under paragraph (1) of this subsection shall not be subject to judicial review in any civil or criminal proceeding for enforcement." The Administrator made his final corrections to Part 413 on September 26, 1983. The defendants have not only picked the wrong court in which to present this argument, they have thought about it too late.[7]

■ Undaunted, the defendants submit that the Administrator's action in promulgating Part 413 shows that Congress exceeded its constitutional powers in enacting 33 U.S.C. § 1317(b). They thus ask the court to declare § 1317(b) unconstitutional. In making this argument, the defendants assume that Congress purported to act under its power to regulate interstate commerce under Art. I, § 8 cl. 3 of the Constitution in passing § 1317(b), a power that historically has included the authority to regulate the nation's navigable waterways.[8] See *Kaiser Aetna v. United States,* 444 U.S. 164, 173, 100 S.Ct. 383, 389, 62 L.Ed.2d 332 (1979) (discussing Congress's power to regulate navigable waterways under Commerce Clause). They argue that because § 1317(b) allows the Administrator to enact regulations that do not contain a requirement that the regulated entity's discharges affect interstate commerce or navigable waterways, § 1317(b) must be unconstitutional, and the court must dismiss the indictment.

The court must reject the defendants' request to declare § 1317(b) unconstitutional, at least for now. As a general rule, "one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional." *United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960). The question throughout this case will thus be whether § 1317(b) as applied to these defendants is constitutional. As part of a motion to dismiss the indictment, the constitutional question becomes very narrow: does the indictment allege facts which indicate that § 1317(b) would be unconstitutional as applied to the defendants? In answering this question, the court must read the indictment " 'to include facts which are necessarily implied by the allegations made therein....' " *Gironda,* 758 F.2d at 1209, quoting *United States v. Anderson,* 532 F.2d 1218, 1222 (9th Cir. 1976).

Reading the indictment with this standard in mind, the court concludes that it

---

**6.** The Water Quality Act of 1987 extended the period of review in § 1369(b)(1) to 120 days. See Pub.L. 100–4, § 505(a), 101 Stat. 75.

**7.** Even if this court could review the Administrator's action in promulgating Part 413, the court would have to dismiss the defendants' challenge outright. While a federal administrative agency may not act outside of the discretion delegated to it by Congress, see *Kent v. Dulles,* 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958); *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971), a court must presume that the agency's actions are regular, see *id.,* and the party who challenges such actions bears the burden of proving otherwise. See *Environmental Defense Fund, Inc. v. Costle,* 657 F.2d 275,

283 n. 28 (D.C.Cir.1981); *NAMF,* 719 F.2d at 638; *Colo. Health Care v. Colo. Dept. of Social Services,* 842 F.2d 1158, 1164 (10th Cir.1988). The defendants present no arguments based on the text of § 1317(b) or the legislative history of that provision that Congress did not intend for the Administrator to issue industry-specific regulations that did not incorporate the General Pretreatment Standards as a predicate.

**8.** This may be an erroneous assumption. One court has suggested that Congress enacted § 1317(b) not only pursuant to the Commerce Clause, but also the General Welfare Clause, U.S. Const. art. I, § 8 cl. 1. See *United States v. Ashland Oil and Transportation Co.,* 504 F.2d 1317, 1325 (6th Cir.1974).

implies several possible grounds for constitutional federal regulation pursuant to § 1317(b). First, the defendants could be engaged in interstate commerce. See *U.S. v. Stillwell*, 900 F.2d 1104, 1110–1112 (7th Cir.1990) (describing breadth of test for effect of defendant's activities on interstate commerce). Second, their discharges could have an effect on interstate commerce, particularly upon but not limited to navigable waterways. See *Kaiser Aetna*, 444 U.S. at 174, 100 S.Ct. at 389 (Commerce Clause may reach water-related activities apart from those affecting navigable waterways). Third, the defendants' activities could have an impact on the general welfare of the citizens of the United States. See *Ashland Oil*, 504 F.2d at 1325. The defendants argue that the indictment should affirmatively allege a link between their activities and a proper subject for federal oversight, but imposing such a requirement would go beyond the purposes of an indictment. See *Gironda*, 758 F.2d at 1209. As noted earlier, the indictment states all of the elements of the offenses with which the defendants are charged and will allow the defendants to prepare a defense. The defendants' suggestion that the government will have to prove a nexus between their activities and a proper area of federal regulation in order to convict them under the Constitution is essentially a defense to the charges stated in the indictment. An indictment need not state facts which would negate a possible defense. See Wright, 1 Federal Practice and Procedure § 125 and cases cited in *id.*, n. 27.

■ The defendants have one last argument, one which applies only to Counts 1–13 and 73–75. According to the defendants, the Administrator's definitions of "Pass Through" and "Interference" in 40 C.F.R. § 403.5 were not final until February 13, 1987. They thus argue that the Administrator's regulations in 40 C.F.R. Part 413 were similarly incomplete, and thus they may not be charged with violating Part 413 prior to February 13, 1987. See 33 U.S.C. § 1317(d). This argument rests on the assumption that the Administrator's definitions of "Pass Through" and "Interference" were vital to the Adminis-

trator's regulations in Part 413. As discussed above, Part 413 is entirely separate from Part 403, and thus the Administrator could have amended or modified Part 403 without endangering the EPA's regulations under Part 413. The Administrator promulgated the present form of Part 413 on September 26, 1983, well before the discharges alleged in Counts 1–13 and 73–75. The indictment thus states claims in these counts against the defendants.

For the reasons stated in this opinion, the court denies the defendants' motion to dismiss the indictment.