DENNIS, Circuit Judge,
dissenting:
Because the majority opinion (1) construes key provisions of the Louisiana Campaign Finance Disclosure Act, La. R.S. 18:1501.1(A) and 18:1483(9)(a), without first certifying the res nova state law questions implicated to the state’s highest court as urged by the Supreme Court, (2) disregards the Supreme Court’s clear holdings in McConnell v. Federal Election Commission, 540 U.S. 93, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003) that (i) the First Amendment permits a campaign disclosure law to require the names and addresses of persons who fund a television or radio broadcast that clearly identifies a candidate within 30 days of a primary and is targeted to the relevant electorate, and (ii) when a federal court imposes a narrowing statutory construction, it must never formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied, and (3) saddles the State of Louisiana with a marginalized and ineffective campaign financial disclosure law that is incongruous with the intent of the Louisiana Legislature and the requirements of the First Amendment, I respectfully dissent.
BACKGROUND
The Center for Individual Freedom (the “Center”), a Virginia non-profit corporation, brought this action under the Civil Rights Act, 42 U.S.C. § 1983, and the Declaratory Judgment Act, 28 U.S.C. § 2201, in the federal district court against the individual members of the Louisiana Board of Ethics to have the Louisiana Campaign Finance Disclosure Act (the “CFDA”) either declared unconstitutional on its face or to have the CFDA’s disclosure and record-keeping provisions narrowly construed, just as the Supreme Court in Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), limited the disclosure provision of the Federal Election Campaign Act (“FECA”), to apply only to persons making expenditures for communications that expressly advocate the election or defeat of a clearly identified candidate, i.e., to communications containing express words of advocacy of election or defeat (“magic words”), such as “vote for,” “elect,” “support,” “cast your ballot for,” “Smith for Congress,” “vote against,” “defeat,” “reject.” Id. at 44, n. 52, 96 S.Ct. 612.
The Center alleges that it desired to finance radio and television broadcasts on “judicial decision-making” issues, inter alia, during the last three weeks of a campaign for the September 18, 2004 primary election of an Associate Justice of the Louisiana Supreme Court targeted to the relevant multi-parish district electorate. The Center contends that it was prepared to run television and radio ads referring to the two candidates as illustrating positions for and against its own viewpoint without expressly advocating the election or defeat of either; that it ultimately chose *667 not to do so because it feared that its funding of the broadcasts easily could have been interpreted as expenditures for the purpose of supporting, opposing, or influencing the election of a person to public office, for which the CFDA would have required the Center to disclose and report the names and addresses of its contributors funding the broadcasts; and that the CFDA is unconstitutionally vague and overbroad because it does not clearly guarantee such persons the right to anonymously fund such broadcasts in the most effective way, viz., by advocating their issue positions while referring to candidates illustrating agreement or opposition to those positions in communications targeted to the relevant electorate during the last few weeks of a primary election campaign.
The majority grants the Center’s request to graft Buckley’s limiting magic words construction on to the CFDA. The majority’s reasoning is that: (1) the CFDA is vague because it requires disclosure when persons make expenditures for the purpose of influencing the election of a person to public office similar to the FECA provision that the Supreme Court found vague and in need of the limiting construction imposed in Buckley; (2) the Supreme Court in McConnell held that the Bipartisan Campaign Reform Act of 2002 (the “BCRA”)’s definition of “electioneering communication” as a disclosure trigger was not vague because it consisted of easily understood and objectively determinable components, viz., expenditure funding of (i) a broadcast (ii) clearly identifying a candidate (iii) aired within a specific time period (iv) and targeted to the relevant electorate; (3) therefore, McConnell has no application whatsoever, express or implicit, to a case involving a vague statute like the CFDA; (4) “To cure [the CFDA’s] vagueness, and receiving no instruction from McConnell to do otherwise, we apply Buckley’s limiting principle to the CFDA[.]”
DISCUSSION
1. Certification
The meaning of the disclosure provision of the CFDA is res nova; it has never been authoritatively interpreted by the Louisiana Supreme Court. Although federal courts generally, have a duty to adjudicate federal questions properly before them, the Supreme Court has long recognized that concerns for comity and federalism may require federal courts to either abstain from deciding federal constitutional issues that are entwined with the interpretation of state law or certify the questions of state law to the state’s highest court for an authoritative interpretation of them before reaching the merits of the cases. In Railroad Comm’n v. Pullman Co., 312 U.S. 496, 501, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the Court held that where uncertain questions of state law must be resolved before a federal constitutional question can be decided, federal courts should abstain until a state court has addressed the state questions. See also Hawaii Housing Authority v. Mid-kiff, 467 U.S. 229, 236-37, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984). This doctrine of abstention acknowledges that federal courts should avoid the unnecessary resolution of federal constitutional issues and that state courts provide the authoritative adjudication of questions of state law. Attention to the policies underlying abstention makes clear that in the circumstances of these cases, a federal court should await a definitive construction by a state court rather than precipitously indulging in a facial challenge to the constitutional validity of a state statute. The First Amendment overbreadth doctrine allows a challenge to the validity of a statute on its face only if the law is substantially overbroad. *668 City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 799-801, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984); New York v. Ferber, 458 U.S. 747, 769-73, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). Thus, analysis of the constitutional claims advanced by the Center necessarily requires construction of the CFDA to assess its scope. Id. at 769, n. 24, 102 S.Ct. 3348; Broadrick v. Oklahoma, 413 U.S. 601, 613, 618, n. 16, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). (“[A] federal court must determine what a state statute means before it can judge its facial constitutionality”; application of the overbreadth doctrine is “strong medicine” and is “employed by the Court sparingly”). Where provisions of a state statute have never been construed or applied by the state’s highest court, it seems rather obvious that interpretation of those statutory provisions by that court could substantially alter the resolution of any claim that the statute is facially invalid under the Federal Constitution. See Harman v. Forssenius, 380 U.S. 528, 535, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965)(explaining that abstention may be necessary where the statute at issue is “subject to an interpretation which will render unnecessary or substantially modify” this Court’s decision once the state court has been allowed to construe the statute).
The United States Supreme Court has encouraged the use of state certification procedures as an alternative to “the more cumbersome and ... problematic abstention doctrine.” See Virginia v. American Booksellers Ass’n, 484 U.S. 383, 397, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988). The purpose of certification is to obtain the benefit of an authoritative construction from the state’s highest court before proceeding to the merits of the dispute. The state court’s interest in accepting a certified question for review is particularly strong when it has not yet had the opportunity to interpret the pertinent statutory language. Id. at 397, 108 S.Ct. 636. Through certification of novel or unsettled questions of state law for authoritative answers by a State’s highest court, a federal court may save “time, energy, and resources and help[ ] build a cooperative judicial federalism.” Lehman Brothers v. Schein, 416 U.S. 386, 391, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974); see also Bellotti v. Baird, 428 U.S. 132, 148, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976) (to warrant district court certification, “[i]t is sufficient that the statute is susceptible of ... an interpretation [that] would avoid or substantially modify the federal constitutional challenge to the statute”). Taking advantage of certification made available by a State may “greatly simplify]” an ultimate adjudication in federal court. See Bellotti 428 U.S. at 151, 96 S.Ct. 2857.
“Speculation by a federal court about the meaning of a state statute in the absence of prior state court adjudication is particularly gratuitous when ... the state courts stand willing to address questions of state law on certification from a federal court.” Id. (quoting Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 510, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985)(O’CONNOR, J., concurring)); see Arizonans for Official English v. Arizona, 520 U.S. 43, 79, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997)(“Warn-ings against premature adjudication of constitutional questions bear heightened attention when a federal court is asked to invalidate a State’s law, for the federal tribunal risks friction-generating error when it endeavors to construe a novel state Act not yet reviewed by the State’s highest court.”)(citing Rescue Army v. Municipal Court of City of Los Angeles, 331 U.S. 549, 573-74, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947)). This is especially true in the context of a state campaign finance disclosure law applicable to all state primary and general elections, including *669 those for the Legislature, the Governor, and other Executive Branch officers, as well as the Supreme Court of Louisiana and many other important offices. The State of Louisiana, as well as all of the other United States, has a great interest in promoting genuinely democratic elections to fill its major public offices free from corruption and other undue influences. For these reasons, the Louisiana Supreme Court should have been afforded an opportunity to construe the Louisiana Campaign Finance Disclosure Act in the first instance.
2. Btickley Is Out; McConnell Is In: Requiring Disclosure Of Expenditures On Electioneering-Type Communications Is Permissible
Unfortunately, the majority not only fails to certify the question of the meaning of the state statute to the state supreme court, it also proceeds through an incorrect interpretation of federal law to superimpose an erroneous and overly intrusive narrowing construction on the state law.
In Buckley, the Supreme Court concluded that the FECA’s disclosure requirement, in its effort to be all-inclusive, raised serious problems of vagueness because it applied to every person who made a contribution or expenditure for the purpose of influencing the nomination or election of a candidate for federal office. 424 U.S. at 76-77, 96 S.Ct. 612. Thus, the subjective intent of the contributor was the primary controlling factor in triggering the disclosure requirement. Because almost any contribution funding a political communication, even if made well prior to the election and without mention of any candidate’s name, could be deemed to have been made to influence an election, the potential reach of the FECA disclosure provision was extremely broad. Thus, to insure that the reach of the disclosure requirement was not impermissibly broad, the Court construed “expenditure” to reach only funds used for communications expressly advocating the election or defeat of a clearly identified candidate. Id. at 44, 96 S.Ct. 612. The Court suggested that there existed “magic words” of express advocacy of election or defeat of a candidate, which were necessary to make communications subject to the disclosure requirement. Id. at 44, n. 52, 96 S.Ct. 612.
In contrast, the Supreme Court in McConnell upheld without limitation the clear and objective BCRA requirement of disclosure of the names and addresses of persons funding an electronic media broadcast made within a 30- or 60-day window prior to a primary or general election, if it clearly identified a candidate and targeted the relevant electorate. 540 U.S. at 105, 124 S.Ct. 619 (explaining that “issues ads broadcast during the 30- and 60-day periods preceding federal primary and general elections are the functional equivalent of express advocacy” and “[t]he justifications for regulating express advocacy apply equally to those ads if they have an electioneering purpose, which the vast majority do”). In drafting the BCRA provision, Congress relied on almost 30 years’ experience which taught that the Buckley “magic words” limitation was functionally meaningless: under Buckley political advertisers easily evaded disclosure by simply eschewing use of the magic words; the outcomes of elections were often influenced by enormous sums spent anonymously to fund TV and radio advertising in the final campaign stages; on the other hand, electronic media advertising during such periods that clearly identified a candidate and targeted the relevant electorate rarely, if ever, was funded for any other purpose than to influence elections. Id. at 189-94, 124 S.Ct. 619.
*670 Thus, the McConnell Court explained, the amount of pure issue electronic media advocacy that might be chilled during a specified campaign homestretch was negligible in comparison with the beneficial effects of public disclosure of the identities of the funders of such electronic electioneering communications. Id. at 196, 124 S.Ct. 619 (agreeing that “the important state interests” upheld through disclosure requirements are “providing the electorate with information, deterring actual corruption and avoiding any appearance thereof, and gathering the data necessary to enforce more substantive electioneering restrictions”). In fact, the McConnell Court agreed with the lower court that “disclosure requirements are constitutional because they do not prevent anyone from speaking.” Id. at 201, 124 S.Ct. 619 (citation omitted). The Court flatly rejected the plaintiffs’ argument that Buckley established that the First Amendment absolutely guaranteed the right of persons to anonymously engage in political speech for the purpose of issues advocacy under any and all circumstances. Id. at 190-93, 124 S.Ct. 619. The Court explained that in Buckley it had merely adopted a narrowing construction of the FECA to avoid a potential constitutional conflict; it did not adopt the Buckley express advocacy limitation and magic words implementation as a freestanding commandment of the First Amendment. Id. Moreover, in doing so, the McConnell Court reaffirmed that it had long rigidly adhered to the tenet never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied, id. at 192, 124 S.Ct. 619 (citing United States v. Raines, 362 U.S. 17, 21, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960)); and that the nature of judicial review constrains a federal court to consider only the case that is actually before it. Id. (citing James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 547, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) (Blackmun, J., dissenting)).
For these reasons, the majority in the present case has clearly misinterpreted the McConnell decision and has misapplied it in engrafting Buckley's limiting construction on to the Louisiana Campaign Finance Disclosure Act. Assuming, without deciding, that the majority has correctly guessed how the Supreme Court of Louisiana would interpret the CFDA, and that the CFDA is unconstitutionally vague as so construed, it clearly does not follow that the majority has adopted a narrowing construction that is appropriate in the light of the Supreme Court’s holdings and teachings in McConnell. On the contrary, the majority’s limiting interpretation of the CFDA would be acceptable only under the theory that the Court in Buckley had con-stitutionalized the express advocacy limitation and magic words prescription, a constitutional theory that the Court expressly rejected in McConnell.
Instead, the Supreme Court’s decision in McConnell clearly indicates that the State of Louisiana may constitutionally require the Center to comply with the disclosure requirements of the CFDA under a construction that is no broader than is required by the precise facts to which it is to be applied in the present case. In this case, the Center asserts that it desired only to engage in issue advocacy, and that the TV and radio advertising it proposed to broadcast during the three weeks prior to the September 18, 2004 Louisiana Supreme Court Associate Justice election, would not have been funded or broadcast for the purpose of influencing the election. But the Center admitted that its broadcasts would clearly identify one or more candidates and be targeted to the relevant electorate. Consequently, the broadcasts that the Center desired to fund fall squarely within a category of speech close *671 ly analogous to the definition of “electioneering communication” in respect to which the Supreme Court held that Congress may under the First Amendment require disclosure, viz. (1) a broadcast (2) clearly identifying a candidate (3) aired within a specific time prior to election, and (4) targeted to the relevant electorate. McConnell, 540 U.S. at 194, 124 S.Ct. 619.
3. The Majority Opinion Formulates A Constitutional Rule Broader Than The Facts Of This Case
In order to reduce the scope of the CFDA to a constitutional scale it is only necessary to construe it so as to limit its disclosure requirement to the names and addresses of those who fund electronic media broadcasts, clearly identifying a candidate, aired within three weeks prior to a primary election, and targeted to the relevant electorate. The majority opinion, however, in disregard of McConnell, grafts the Buckley express advoeacy/magic words limitation on to the CFDA, tacitly formulating and applying a much broader rule that nullifies the CFDA’s disclosure requirement in respect to all political speech except for that containing the Buckley magic words of express candidate advocacy. Thus, the majority opinion violates the tenet of the Supreme Court, as reaffirmed in McConnell, against the formulation of a constitutional rule broader than the precise facts of the case to which it applies.[1]
Consequently, the majority is simply mistaken in assuming that the McConnell Court’s holdings have no effect upon “the continuing relevance of the magic words requirement as a tool of statutory construction where a court is dealing with a vague campaign finance regulation.” The majority’s assumption rests precariously on a false syllogism, viz., McConnell dealt with an unambiguous statute; the present ease deals with an ambiguous statute (according to the majority’s necessarily non-authoritative state law interpretation); therefore, nothing McConnell says bears upon our narrowing construction of a state statute. Only a moment’s reflection is needed to see the fallacy of this sophism. The Supreme Court has developed First Amendment principles that it has applied to determine whether any particular statute is constitutionally ambiguous and in need of a narrowing construction. Therefore, the Court’s teachings on the First Amendment in such cases are generally authoritative and binding upon the inferior federal courts regardless of the court’s conclusion as to whether the statute in the particular case before it is found to be ambiguous and in need of a narrowing construction. Thus, the majority cannot legitimately disregard the teachings of the McConnell Court as irrelevant “assertions,” as it seeks to do, simply because the Court determined that the statute in that case was not ambiguous and the majority has decided the case before us is ambiguous.
Therefore, the majority erred in concluding that it must “continue to adhere to the express advocacy/issue advocacy dichotomy that the Court set up in Buckley and that we employed in Chamber of Commerce of the United States v. Moore, 288 F.3d 187, 194-95 (5th Cir.2002).” Further, as Justice Thomas aptly recognized, the McConnell Court, “by concluding that the ‘express advocacy’ limitation derived by Buckley is not a constitutionally mandated line, has, in one blow, overturned every *672 Court of Appeals that has addressed this question” including, inter alia, Chamber of Commerce of the United States v. Moore, supra., on which the majority erroneously relies. 540 U.S. at 278, n. 11, 124 S.Ct. 619 (Thomas, J., dissenting)
CONCLUSION
For these reasons, I respectfully dissent. The majority erred in refusing to certify the res nova state law questions implicated in the interpretation of the CFDA to the Louisiana Supreme Court. The majority further erred in disregarding the holdings and teachings of McConnell which require, at the most, limiting the CFDA’s disclosure requirement to a category of political speech analogous to that defined as “electioneering communication” by Congress in the BCRA that the McConnell Court upheld. Finally, the majority erred needlessly and most harmfully in grafting on to the CFDA the Buckley magic words of express candidate advocacy, thereby nullifying the CFDA’s disclosure requirement except in those rare instances in which political speakers fail to eschew the magic words. Ultimately, I believe that this case would be more properly decided by the Louisiana Supreme Court. For these reasons, I respectfully dissent from the majority’s decision.

. Although the majority does not disclose the constitutional rule supporting its narrowing construction of the CFDA, the majority must have tacitly formulated such a rule. For without a constitutional rule as a basis this court has no authority to narrowly construe state statutes.